# THE STATE v. LEHMAN, Appellant.

## Division Two, June 9, 1903.

1. **Special Juries: DRAWN BY LOT.** The right to have a special jury drawn by lot is nowhere guaranteed by the statutes of Missouri. The very object of the statute authorizing a special jury is to allow the officer who selects the jurors to exercise his special judgment instead of drawing at random from the whole list of jurors.

2. **Evidence: PRIVILEGED COMMUNICATION TO LAWYER.** A communication made to a lawyer in an effort to enlist his services in inducing a briber to disgorge a certain fund put up by him as the price of certain legislation, is not a privileged communication, and he is not incompetent to testify the facts communicated to him by defendant in that connection.

3. ————: **EXCLUSION: NO OBJECTION.** After a witness has testified for the State and defendant has cross-examined him, without objection, it is too late to exclude his testimony as incompetent.

4. **Perjury: AFTER INDICTMENT IN MAIN CHARGE.** The examination of a witness concerning his knowledge of a certain bribery is rendered none the less material, and his false answers are none the less perjury, because that examination was made after the grand jury had voted to return, but had not returned, indictments against the two main offenders in that crime. It was the duty of the grand jury to ascertain all the competent witnesses to the bribery, and their inquiries were not shut off by voting to return the indictments.

5. ————: **COLLATERAL EVIDENCE.** Any evidence that sheds light on the motive for the crime charged, is competent. For instance, where defendant is being tried for perjury, for falsely swearing he knew nothing of a bribery transaction between a certain member of the Municipal Assembly of which he was a member and certain street railway officials who desired a franchise, it is competent to prove the existence of the corruption fund, and the pending of the franchise ordinance for which the bribe was put up, and the fact that the other house of the assembly was enjoined from passing it, and that therefore the bribery agreement failed.

6. ————: **SELF-INCRIMINATION: GRAND JURY: EXAMINATION OF SUSPECTS.** It is against positive constitutional guaranties and conflicts with man's instincts of fairness, right and propriety, that the person whose conduct is under investigation by a grand jury should himself be called as a witness without being advised that his conduct

State v. Lehman.

is being investigated. Nor can any incriminating evidence thus obtained from him be used against him on his trial for a crime which his evidence in that way obtained tends to prove. But because the grand jury or even the court erroneously requires him to testify concerning a conspiracy between himself and other confederates to commit a crime, he is none the less guilty of willful and corrupt perjury if he testifies falsely. His course is to plead the constitutional right not to be compelled to testify against himself.

7. ———: PERJURY: BRIBERY: CONSPIRACY. A witness before a grand jury which is investigating a charge of bribery against nineteen members of a city council, is not justified or excused for falsely swearing he knew nothing about any of the facts which would have proved that said nineteen members, himself being one of them, had entered into a conspiracy to sell their votes for a franchise to a street railway; nor were his false answers any the less perjury, because an attempt was made at the trial to prove that his testimony was perjured by showing such conspiracy to exist and that he was a confederate therein. He should have claimed his right under the Constitution which does not permit a witness to be compelled to testify against himself in a criminal cause.

8. ———: ———: COMPULSORY TESTIMONY. Because a witness is wrongfully compelled to testify concerning a crime in which he participated, it is neither true nor sound to say that he is thereby compelled to commit perjury.

9. ———: ———: ———: ADMISSIONS BEFORE GRAND JURY. If a witness, because of his connection with the crime being investigated by the grand jury, is wrongfully compelled to testify, his admissions against himself can not be used against him on a subsequent trial for the offense about which he was compelled to testify.

10. ———: HABEAS CORPUS. A witness who is aware that he is suspected of being connected with the crime then being investigated by the grand jury can refuse to testify in furtherance of that investigation on the ground that his testimony would tend to incriminate him, and if the jury persists and he is committed by the court, he may be released under habeas corpus.

11. ———: KNOWING AND HEARING: INSTRUCTION. Where a defendant is indicted for falsely swearing he did not know of the existence of a certain bribery corruption fund, the instructions should not permit him to be convicted if "he had ever heard" of such fund.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

REVERSED AND REMANDED.

*Thomas B. Harvey* for appellant; *C. H. Krum, Thomas J. Rowe* and *John A. Gernez* of counsel.

*Edward C. Crow,* Attorney-General, *C. D. Corum* and *Jos. W. Folk* for the State.

GANTT, P. J.—At the December term, 1901, of the circuit court of the city of St. Louis, in Division No. 8 thereof, the grand jury of said city preferred an indictment against the defendant, Julius Lehman, for perjury.

As the said indictment is, word for word, in the same form as the indictment against Harry A. Faulkner, in which an opinion has been handed down on this day, save and except the name of the defendant is substituted for that of said Faulkner, it is deemed unnecessary to set it out in full. The defendant moved to quash the same on the same grounds practically that were urged in the argument of these causes in this court and the motion was overruled and defendant excepted.

A special venire was ordered on the application of the State, and on its return the defendant moved to quash it because not summoned and selected according to law, and because contrary to the general spirit of our laws, and in violation of section 22 of article 2 of the Constitution of Missouri, guaranteeing an impartial jury, etc. On the hearing of this motion it was admitted the jury commissioner selected the jurors from the general petit jury list, and had no separate list of jurors of more than ordinary intelligence, and they were not selected by lot or chance, but the commissioner exercised his judgment in making the selection from the general list of jurors subject to jury duty in said city.

The court overruled this motion and defendant excepted. On the trial of this defendant substantially the same evidence was introduced by the State as to the organization of the Municipal Assembly of St. Louis; that

John K. Murrell and defendant were members of the House of Delegates in 1900 and 1901, and the pendency in the Assembly of an ordinance known as Council Bill No. 44, giving and granting certain privileges and franchises to the St. Louis and Suburban Railway Company. The evidence as to the proposition of Murrell to Stock, who represented the Suburban in the matter of getting the franchise, and the corrupt agreement by which Murrell agreed that if Stock would deposit $75,000 in the Lincoln Trust Company to be paid Murrell and other members of the House of Delegates for whom he claimed to be acting when the ordinance was passed and signed by the mayor, was shown by the same evidence as that detailed in the opinion in State v. Faulkner. The evidence as to the deposit by Stock and Murrell of the $75,000 in the said trust company was the same also.

After the ordinance passed the Council and was sent to the House of Delegates an injunction was issued by the circuit court of the city of St. Louis enjoining the House of Delegates from taking any action thereon. While this injunction was still pending the House of Delegates expired by limitation of law, a new House being elected.

The evidence tended to show, however, that Murrell and defendant and other members of the old House whose names were not designated save as "the boys," insisted that they were entitled to the $75,000, which claim Stock repudiated. It was in evidence that Murrell then about the 18th of January, 1902, proposed to accept one-half of the sum, and Stock declined to do more than pay any expenses Murrell had incurred in the matter, whereupon Murrell said to him, "The grand jury will take hold of it."

In April or May, 1902, the defendant, Lehman, a member of the House of Delegates, had a conversation with Paul Reiss, according to the evidence of Reiss, who was also a member of the House of Delegates.

Reiss was a lawyer, with an office in the Wainwright building in St. Louis, and prior to this conversation had been retained by defendant in some insurance litigation and some other minor matters. After settling Reiss's fee for the insurance suits, according to Reiss, the defendant, Lehman, said to him:

"By the way, I want to consult you concerning a matter which interests the boys of the old House; it is a matter a lawyer ought to take hold of, and now you are a member of the House, you are best qualified to take this matter up." Thereupon he asked Reiss if he knew one Philip Stock. Reiss told him he didn't. Lehman said, "You must know him, he is a prominent brewer with offices in the Lincoln Trust Building." Reiss told him he did not know Philip Stock, a brewer; that he was positive that no brewer had an office there, but that he did know Philip Stock, and defendant said, "That must be the man." He then proceeded to tell Reiss that said Stock had a key to a box in the Lincoln Trust Company, which he said contained $75,000, and this was to go to "the boys" when the Suburban bill had become a law, and asked Reiss whether or not he would see Stock and bring about a settlement concerning the sum. Reiss told him he would not act in the matter, and further, he thought he must be mistaken in the party, Stock; that he knew him and did not believe he would be connected with any matter of this kind.

He further stated that the bill had not become a law because of the injunction, but that the boys were always ready to carry out their part of the contract, or words to that effect.

No objection was made to this evidence in chief on the ground that it was a privileged communication, or for any other reason, nor at the cross-examination of the witness, until after a further examination by the court and counsel for defendant, and then Judge Harvey moved the court to strike out the testimony of Reiss because it had been developed on cross-examination of

the witness that the facts were learned under circumstances that made the communication privileged. The court overruled this motion and defendant excepted.

Various witnesses testified in behalf of defendant that his general reputation for truth and veracity, honesty and integrity was good.

F. C. Gadsdorf testified he was present when the defendant gave Reiss a check for $400 in payment of his services as his attorney. That Lehman and Reiss were together probably ten or fifteen minutes; that he heard their entire conversation and nothing whatever was said about the $75,000 being in the Lincoln Trust Company, or anywhere else, or in regard to Philip Stock's connection with that money.

Defendant testified in his own behalf and denied all knowledge of the deposit of the $75,000 and denied *in toto* the conversation to which Reiss testified. Other specific evidence may be noted in the opinion.

I. The indictment is not open to the objections urged against it, of immateriality of the testimony upon which the perjury was assigned and of repugnancy. We have fully discussed both of these propositions in State v. Faulkner, which was argued in connection with this case, and adhere to the conclusions therein reached.

II. The defendant's motion to quash the special venire was properly overruled. Special juries were allowed by the common law, and our Constitution nowhere denies that right. Under the general statute of this State the right to have a special jury drawn by chance is nowhere guaranteed. Given the right to a special jury, it was entirely competent for the Legislature to provide the method so long as the Constitution was not otherwise violated. This whole question was so fully discussed in State ex rel. v. Withrow, 133 Mo. 500, that we do not feel called upon to again enter upon a defense of the statute. That case was reaffirmed in State v. Hamey, 168 Mo. 167. The very object of the statute is to allow the officer who makes the selection to exercise

his best judgment instead of drawing at random from the whole list of jurors. As said in State v. Faulkner, there is no conflict between the special act applicable to St. Louis and the general statute of the State. The Revised Statutes of the United States recognize the right to special juries and provides they shall be selected as provided by the laws of the State in which the jury is required. [U. S. Comp. Stats. 1901, sec. 805.]

III. As to the evidence of Reiss, we have already fully expressed our views in State v. Faulkner that it was not a privileged communication. It was not a communication as to a matter of employment within the legitimate scope or province of professional employment. [See authorities cited in State v. Faulkner.]

But there is additional reason why the admission of this testimony is not reversible error in this case. No objection whatever was made to it when it was offered in chief. Nor until after the defendant had fully cross-examined the witness.

The motion to exclude came too late. We can not agree with the learned counsel for defendant that the fact that Reiss had been Lehman's attorney, and the circumstances under which the communication was made, was disclosed for the first time on the cross-examination. His relationship was as apparent when he was testifying in chief as it was on the cross-examination. Having permitted him to testify without objection and having cross-examined him thoroughly, the defendant was too late with his motion to exclude. [Hickman v. Green, 123 Mo. 173; State v. Hope, 100 Mo. 347; Maxwell v. Railroad, 85 Mo. 95; Hume v. Hopkins, 140 Mo. loc. cit. 76; State v. Marcks, 140 Mo. 668-9, and cases cited.]

Of course, when neither the form of the question, nor the preliminary answers of the witness, disclose the incompetency of the witness or his evidence, and the opposite party, as soon as it appears to him, promptly

moves to exclude it, he is not in default. [State v. Foley, 144 Mo. 618-9.] But he is not permitted to speculate upon the evidence, and after finding it adverse then move to exclude. This is the settled doctrine in this State.

IV. The proposition advanced in State v. Faulkner that because the grand jurors testified that at the time defendant was sworn and testified before them they had already voted to indict Murrell, is also pressed in this case on the ground that any evidence he might then have given on the subject of the deposit of $75,000 was wholly immaterial because that fact had already been established. But for the reasons given in Faulkner's case we hold that the mere fact that they had voted to indict Murrell in no manner divested their authority to continue the investigation of Murrell's offense, up to the time, at least, of the returning of the indictment into court, and it appears beyond all cavil that when defendant was being examined they were still investigating the charge against Murrell and the indictment had not been signed by the foreman and returned into court. Until that time there was no indictment in law against Murrell. It was their duty to inquire and ascertain all the competent witnesses to establish the truth of their indictment, and they were not bound to content themselves with Stock's evidence. While Stock had testified before them, it was still open to him to refuse to testify as to his own part in the bribery transaction when the case was called against Murrell, and even if he testified the jury were at liberty to weigh his evidence as an accomplice in the crime, and the State was bound to prove Murrell's guilt beyond a reasonable doubt, and if the grand jury could find other witnesses to establish the charge they were at liberty and required to do so. The inquiry was material and if defendant knew of the deposit, the sources of his knowledge were important.

V.  As to various objections to the evidence of the transaction between Turner, Stock and Murrell, that evidence was admitted solely for the purpose of proving that the deposit was made by them and in fact existed, and the court expressly so limited it in its sixth instruction.  Neither was there any error in proving the pending of the ordinance for the passage of which the bribe was put on deposit, nor the fact that the House of Delegates was enjoined.  This evidence threw light on the motive for the crime charged.

VI.  It is insisted in this case, as it was in Faulkner's case, that the court should have given defendant's instruction to acquit the defendant if the grand jury were investigating a charge against defendant at the time he testified before them and was not notified by them that he could not be compelled to testify against himself.  We have examined every authority cited by defendant and all those we could find in an independent investigation, and as said in Faulkner's case, we find no decision which goes to the length contended for by defendant.  An examination of the record discloses that every grand juror who testified on this matter distinctly and positively asserted they were investigating the Murrell and Kratz cases when they examined defendant.  The Murrell investigation had disclosed that he assumed to act for other members of the House.  It was not to be assumed or presumed that every member of the House was a party to the bribery.

It was certainly competent to call members of that body to ascertain if Murrell had falsely charged them with being in the conspiracy with him, and their positions as delegates would naturally suggest that they would be the persons most likely to have observed Murrell's conduct or have heard admissions made by him.

While it is absolutely clear that no court or grand jury can compel any person to testify against himself, and while it is against positive constitutional guaranties and against all of our instincts and notions of fairness,

right and propriety that the person who is under inves- tigation should himself be called as a witness without advising him that his conduct is being investigated, and while any incriminating evidence thus obtained from him can not be used against him in an indictment for the crime which such evidence tends to prove, the further proposition that, because the prosecuting attorney and the grand jury or even the circuit court should erroneously require him to testify, he can not commit perjury in so doing, is a new and distinct one, to-wit, that because of such error on the part of the grand jury, the defendant is justified in committing willful and corrupt perjury. . He at no time objected to testifying, and did not claim his privilege. We think that the great weight of authority and reason alike is opposed to such a doctrine. It is one thing to refuse to answer a question, the answer to which would criminate the witness and when compelled by the order of a court of competent jurisdiction to answer under protest, and another to say that merely because a court erroneously requires an answer the witness is at liberty to commit perjury. As we pointed out in State v. Faulkner, there are always two legal avenues open to a witness so situated by which he may avoid committing perjury.

If, as his counsel insist, he was aware the grand jury suspected him of being implicated in the bribery with Murrell, then he knew enough to decline to criminate himself, and he could have declined to answer, and if the grand jury had persisted and the circuit court had committed him he could have been relieved on habeas corpus or, on the other hand, if he had under those circumstances, testified to anything criminating, it is clear that under our ruling in State v. Young, 119 Mo. 520, such incriminating evidence could not have been admitted against him on an indictment for bribery based on his evidence, and if it had, the judgment would have been reversed. But because he is wrongfully required to testify it is not true or sound to say that he is thereby

compelled to commit perjury. If he testifies truthfully
and it criminates him, he can not be guilty of perjury,
nor can his admissions be admitted against him on a
trial for the offense about which he testified. While in
this particular case the record shows he was not being
investigated, but Murrell was, we are still of the opinion
that if he had been, he was not justified in committing
perjury.

   While the United States District Court in one of the
cases cited goes to the length of holding that a motion to
quash should be sustained, if timely made, if the witness
be indicted for the offense about which he was examined,
it did not hold, nor do we think anywhere in the range
of English or American decisions outside of *the dictum*
in Pipes v. State, 26 Tex. App. 318, any adjudication
can be found which holds one guiltless of perjury under
such circumstances, and the instruction so declaring
was properly refused. [See authorities cited on this
point in Faulkner's case.]

   VII. We are thus brought to the instructions in
the case.

   The second instruction given by the court of its own
motion authorized the jury if they found from the evi-
dence that the defendant before such grand jury ''did
then and there falsely swear and testify under oath that
he did not know of and had never heard of the existence
of the said $75,000 deposited in the Lincoln Trust Com-
pany, and if you further find and believe from the evi-
dence that in truth and in fact the defendant did at the
time he so testified, well know, aside from any informa-
tion he may have acquired through the newspapers, of
the existence of the said sum of $75,000, and that said
sum was deposited in a box in the safe deposit vault of
the Lincoln Trust Company, and that when he so swore
and testified under oath (if you believe and find from
the evidence he did so swear) he willfully and corruptly
testified falsely, you will find him guilty,'' etc. While
varying somewhat from the form of the instruction con-

demned in Faulkner's case, it is evident that like the
instruction in that case it submitted the issue of the
falsity of defendant's evidence as to whether *he had
ever heard* of said $75,000 whereas the indictment on
which he was tried assigned no perjury on that part
of his testimony but alleges only that "in truth and fact
*he knew* of said deposit," etc.

Under this instruction the jury might have be-
lieved that he did not know, *but had heard,* from some
source other than the newspapers, of said deposit
and so believing would have been justified by this in-
struction in convicting him of perjury for falsely swear-
ing he *had never heard of it.* The court had no right to
submit an issue not tendered by the indictment and in
so doing clearly erred. [See authorities cited in Faulk-
ner's case.]    Had the court limited this instruction as
it did the third instruction for the State, it would have
avoided this error.

The fourth instruction for the State was misleading
in that it left the inference that the fact that defendant
was a member of the combine would of itself have been
evidence of his knowledge without further qualifying
it by requiring the jury to find the criminal purpose and
object of said combine as pointed out in Faulkner's case.
The first instruction is open to the verbal criticism made
that it requires that Murrell and Stock made an "un-
dertaking" but this can be easily remedied on another
trial.    It should have been submitted whether Murrell
*in consideration* of a promise or undertaking by Stock
to deposit said sum, etc.

The sixth instruction was correct.    The seventh in-
struction for defendant should have been given.

Notwithstanding the proof that Stock and Murrell
entered into the agreement and deposited the $75,000, in
the absence of defendant's knowledge thereof it in no
way established defendant's guilt.    His knowledge was
the material fact upon which guilt could alone be based.
The fourth instruction asked by defendant should have

been given with the modification required in Faulkner's case to the fourth instruction asked by defendant in that case. With this additional qualification any statement made to him by Murrell or Murrell and Stock to the effect they had so deposited it would have been knowledge to which the grand jury would have been entitled, and would have been direct evidence against Murrell.

The sixth instruction for defendant was properly refused for reasons given in Faulkner's case.

Learned counsel have earnestly argued that there was no material evidence tending to corroborate the evidence of Reiss. As this judgment must be reversed and the cause remanded for error in the instructions of the court, it would be manifestly improper in us to express our opinion as to the weight of the evidence. There was evidence sufficient to submit the case to the jury. The judgment is reversed and the cause remanded for a new trial in accordance with the views above expressed.

*Burgess* and *Fox, JJ.,* concur.