THE STATE v. FAY PEEBLES, Appellant.—87 S. W. (2d) 167.

Division Two, November 5, 1935.

*Joseph N. Miniace* and *James P. McGuire* for appellant.

974

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

WESTHUES, C.—By an information filed in the Circuit Court of Livingston County, Missouri, appellant was charged with the crime of forgery in the third degree. Upon a trial a jury found him guilty and assessed a punishment of three years' imprisonment in the penitentiary. From the sentence imposed in accordance with the verdict of the jury appellant has appealed.

The sufficiency of the evidence to sustain a conviction was challenged in the motion for new trial. Appellant, while on the witness stand, admitted that he had, without authority, endorsed the name of Harvey L. Erwin upon a check, but maintained that it was done without any intent to defraud. The intent with which the act was done was, therefore, the main issue in the case. Appellant, at the time, was president of the North Missouri Finance Company of Chillicothe. This company was engaged in the business of making small loans. Appellant testified that the company had sustained a loss of about $300 in a certain transaction (the details of which are not material to the issues), which loss, if shown upon the books of the company, would have prevented the company from paying a proposed dividend; that to cover up this loss he prepared fictitious papers which tended to show that the company had made a number of small loans, when in fact none were made. The check in question in this case was one of these spurious papers. Appellant admitted that he wrote a check on the company for $60, dated March 18, 1933, pay-

able to Harvey Erwin, and that he then endorsed Erwin's name on the back of the check. The check was placed in a drawer in the office and appeared to be an asset of the company. Later the check was delivered to one Jenkins in payment of an obligation of the company. Jenkins cashed and obtained $60 on the check. Appellant, and also the clerk who delivered the check to Jenkins, testified that it was delivered through a mistake; that the check was not prepared to be used in that way, but only as one of the papers to cover up the loss sustained.

Appellant's contention is that under the facts enumerated the trial court should have sustained a demurrer to the evidence because no fraudulent intent was shown. The question of intent was submitted to the jury. Note Instruction D-6, given at appellant's request:

" 'The Court instructs the jury that the intent of the accused to defraud is the essence of the crime and must be proved beyond a reasonable doubt, and that unless you find and believe from the evidence beyond a reasonable doubt that the endorsement of the name of Harvey L. Erwin on the check described in the information was made by the defendant with the intent to defraud, then you must find the defendant not guilty.' "

The instruction is in conformity with Section 4190, Revised Statutes 1929 (Mo. Stat. Ann., p. 2943). The intent to defraud, under this section, need not be an intent to defraud any particular person. Neither is it necessary that anyone should be defrauded. [26 C. J. 906, sec. 21; State v. Eades, 68 Mo. 150.] Taking appellant's evidence as true the jury could justly infer that the check was endorsed with an intent to defraud. The check was admittedly drawn and endorsed to reflect a better financial condition on the books of the finance company than the actual facts justified. It was in evidence that no dividend could have been paid by the company unless the loss of $300 was absorbed. The forgery was, therefore, committed for the purpose of deceiving. The payment of a dividend out of the capital would have impaired the capital stock of the company. It would also have been in fraud of creditors. The fictitious papers, including the check in question, would have tended to mislead the state examiner. Note appellant's testimony:

"Q. I say, you made this forgery and you made these entries about this loan on the books in order to deceive the people doing business with your company and to enhance it's value in the eyes of the prospective purchasers of gold notes? A. We did it to offset losses we had that wasn't any of our fault.

"Q. It showed them as assets for the people to see? A. That's right.

"Q. And it increased the value of your company to anybody who would look at your sheet there and statement, isn't that right? A. Yes, it would."

We rule the evidence justified a jury in finding that the forgery was committed with an intent to defraud.

Appellant complains in his motion for new trial that the trial court erred "in failing to define the crime of forgery in the third degree." Appellant did not request such an instruction to be given. The court gave an instruction requiring the jury to affirmatively find, before they were authorized to convict appellant, all the necessary facts which constituted forgery in the third degree. This was sufficient. It will be noted that the trial court gave Instruction number D-6, supra, at appellant's request, which specifically required the jury to find that the act was committed with an intent to defraud. This was the main disputed issue in the case. The instructions amply protected the rights of appellant.

Appellant was apprehended in the State of California and returned, by the sheriff, to Livingston County, Missouri. The evidence disclosed that the son of the sheriff and the prosecuting attorney accompanied the sheriff on this journey. On the return trip appellant inquired of the nature of the charges against him and a conversation followed between appellant and the prosecuting attorney with reference to the charges against appellant. The State called the sheriff and his son as witnesses to prove the substance of this conversation. The admission of this evidence was made the basis of five separate assignments of error in appellant's motion for new trial. The major portion of this evidence, concerning statements made by appellant, coincided with appellant's evidence at the trial and was not harmful. Upon an examination of the bill of exceptions we find that appellant failed to object to that portion of the evidence of which he mostly complains in his motion for new trial. Note what occurred:

"Q. (By MR. BRADEN) Tell the jury as near as you can remember what the defendant said, if anything, in relation to that. A. Well, after we got out of Los Angeles he was talking to Mr. Braden and asked him what the charges were and Mr. Braden told him that it was false entries and embezzlement and he said when he got back here maybe it wouldn't be quite so bad and Mr. Braden said, 'Maybe not. If you do the right thing, but I have other charges that I could file,' and I don't know just what all was said then.

"Q. Do you recall at that time anything being said about the forgery?

"MR. SHY: We are objecting to that as leading and suggestive. Let the witness tell what was said in his own words.

"THE COURT: Go ahead. Overruled.

"(To which action and ruling of the Court, the defendant, by counsel, then and there duly excepted at the time, and still excepts.)

"Q. (By MR. BRADEN) Of the signature of Mr. Erwin to this

check? A. Well, Mr. Braden showed him the check of Mr. Erwin's and he said that it might not be so bad after he got back here and he wanted to know if there would be any way to fix it up so he wouldn't have to go to jail, and he said if he could get out on bond that he would try to make the money and settle which he thought he could do with everybody back here unless it might be Mr. Meek.

"Mr. Shy: We object to that and ask that be stricken out of the record and ask that the jury be instructed to disregard it because of the fact he offered to pay up hasn't any probative force whatever."

The record shows that the same procedure was followed when the other witness testified with reference to the statements alleged to have been made. It will be noted that counsel for appellant made an objection that the question was leading and suggestive and asked to let the witness tell what was said; that after the witness related what was said counsel asked that the evidence be stricken from the record. It is a settled rule of law that if no objection is made to the introduction of evidence when its objectionable nature is apparent a motion to strike out such evidence will be overruled. A litigant is not permitted to wait and see if the evidence is harmful and then have it stricken from the record. [See State v. Cain, 37 S. W. (2d) 416, l. c. 417, 418 (4), and cases there cited. Also State v. Matkins, 326 Mo. 1072, 34 S. W. (2d) 1, l. c. 5, 6 (8).] Appellant, therefore, waived his right, if in fact he had any, to the admissibility of the evidence.

We have examined the record proper and find it free from error. The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Westhues, C., is adopted as the opinion of the court. All the judges concur.