[1] Upon an amended information Raymond Eugene Montgomery was charged with burglary in the second degree and larceny, with four prior felony convictions and sentences which he served concurrently. A jury found the four prior convictions and the defendant guilty of the burglary and the larceny and assessed his punishment at ten years in the penitentiary for the burglary and an additional five years for the larceny. Mo.R.S.A. §§ 4435, 4445, 4448, 4854. He has not filed a brief upon this appeal and we therefore examine the record and the eighteen assignments of error in his motion for a new trial. Mo.R.S.A. § 4150; State v. Grubbs, Mo. Sup., 214 S.W.2d 435.
[2] When Mr. and Mrs. Walter Bauer returned to their apartment at 3304 Halliday after 11 o'clock on the night of January 16, 1948 they discovered that their apartment had been burglarized and that certain of their property, including silverware, was missing. About 7:30 the following morning Mr. Bauer was called to a police station and there identified his property which police officers had found in the defendant's home. The police brought the defendant into a room with Mr. Bauer and the defendant told Mr. Bauer that he had burglarized the apartment and stolen the silverware. He described the iron bar with which he pried the apartment window, the bar was found and it fitted the marks on the window. Unquestionably the state's evidence was sufficient to prove the crime and the defendant's guilt as charged, even though the first four assignments of error in his motion for a new trial that the verdict is against the weight of the evidence and the result of bias and prejudice are insufficient to raise the point. Mo. R.S.A. § 4125; State v. Stucker, 352 Mo. 1056, 180 S.W.2d 719, 722. Likewise, assignment six, that "the court erred in overruling objections of the defendant to testimony offered by the State, and in admitting into evidence, over the objections and exceptions of the defendant, irrelevant, immaterial, and prejudicial evidence offered by the State," is so general and indefinite that it presents nothing for this court to review. State v. Courtney, 356 Mo. 531, 202 S.W.2d 72, 74.
[3] The fifth assignment in the motion is that "the punishment assessed is excessive, and not consistent with the competent evidence in the case." It is not clear just what this assignment means. But, as we have said, the jury found the four prior convictions, which the defendant readily admitted when he testified, and the jury also found the burglary and the larceny. The second proviso of the habitual criminal act is "if such subsequent offense be such that, upon a first conviction, the offender would be punished by imprisonment for a limited term of years, then such person shall be punished by imprisonment in the penitentiary for the longest term prescribed upon a conviction for such first offense; * * *." Mo. R.S.A. § 4854. Burglary in the second degree, of which the defendant was found guilty (Mo.R.S.A. § 4435) is punishable by imprisonment from two to ten years (Mo.R.S.A. § 4445) and since he also committed a larceny in connection with the burglary and the jury has specifically found that he did, the jury properly added to the maximum sentence of ten years for the burglary "in addition to the punishment hereinbefore prescribed for the burglary, not less than two nor exceeding five years." The punishment is not, therefore, excessive; it could not have been less under the jury's finding. State v. Breeden, Mo. Sup., 180 S.W.2d 684.
[4] It may be that the statement in assignment five "and not consistent with the competent evidence in the case" refers to and should be considered in connection with assignment seven. The substance of assignment seven is that the habitual *Page 466 
criminal act is "inapplicable in a case where the prior convictions upon which the Information is based have resulted in sentences which were not fully served and complied with by the defendant." In this assignment it is also urged that the court erred in not quashing the information because of the inapplicability of the habitual criminal act but we were unable to find any such motion in the record. However, in the record, when proof of the prior convictions was being made defendant's counsel said that he was going to move to quash, and he did object, because the proof did not come within the habitual criminal act in that "it shows his discharge prior to compliance with the sentence, his discharge under seven-twelfths, his conditional release." The appellant's point is that because of his good behavior, while confined in the penitentiary, he was discharged after serving "three-fourths of the time for which he * * * may have been sentenced" and therefore he did not come within the terms of the habitual criminal act "shall be discharged, either upon pardon or upon compliance with the sentence, * * *." Mo.R.S.A. § 4854. The statute (Mo.R.S.A. § 9086) under which he was released without having served the full term for which he was sentenced specifically provides that he "shall be discharged in the same manner as if said convict had served the full time for which sentenced, and in such case no pardon from the governor shall be required; * * *." In the second place, if the assignment is directed to the point that he was discharged on a conditional release or a conditional commutation and therefore did not come within the habitual criminal act, the statute reducing the time of a sentence for good behavior is not a conditional commutation or release and is distinct from other forms of clemency. 41 Am.Jur., Secs. 41-44, p. 914. In any event, it has now been definitely determined that one released on conditional commutation is amenable to prosecution and punishment under the habitual criminal act. State ex rel. Stewart v. Blair, 356 Mo. 790, 203 S.W.2d 716. So the punishment was "consistent with the competent evidence" and it was not error to refuse to quash the information.
[5] Assignments eight and nine concern witness Laux and his testimony. Mr. Laux was a deputy clerk and testified from the records to the defendant's prior convictions. It was first objected that Mr. Laux was not competent to testify to the prior convictions because the records were not duly and properly authenticated and Laux was unable to testify as of his own personal knowledge to their accuracy. It was also objected that Laux' name had not been endorsed on the amended information as a witness for the state as required by Mo.R.S.A. § 3894 and, therefore, it was error for the court to permit him to testify. When he was offered as a witness, however, it developed that the state's attorney had given defendant's counsel two weeks' notice that he intended to prove the prior convictions and that the court had given leave to endorse the clerk's name, Mr. Schuler's, on the information. Although defendant's counsel orally objected and stated that he was going to move to quash and, further, ask time to meet the testimony, there was in fact no written motion to quash or a request for a continuance. State v. Boone, 355 Mo. 550, 196 S.W.2d 794; State v. Derrington, Mo.Sup., 137 S.W.2d 468. Furthermore, when the defendant testified he freely admitted the four prior convictions, as well as an additional one in another jurisdiction. In that circumstance the defendant's rights could not have been prejudiced and it was not error to overrule assignments of error eight and nine. State v. Hacker, Mo.Sup., 214 S.W.2d 413; State v. Marlin, Mo.Sup., 177 S.W.2d 485; State v. Kimbrough, 350 Mo. 609, 166 S.W.2d 1077.
[6] Assignments ten and thirteen in the motion are directed to the court's failure to instruct the jury to disregard certain evidence and to discharge the jury because of a voluntary statement by one of the state's witnesses. In one the defendant says that the court refused to instruct the jury to disregard the police sergeant's answer to this question: "Q. *Page 467 
Did you take anything from the defendant's house? A. Yes. We found a whole truckload of stuff that had been stolen there." We have been unable to find that answer in Sergeant O'Neal's testimony. In cross-examination of the defendant the state's attorney asked: "Do you know how much stuff the police took from your house? A. I do not. Q. They took a couple of automobiles full, didn't they?" The trial court sustained defense counsel's objection to the form of the question and there was no further or other objection or request for action on the part of the court. On cross-examination of the defendant's wife the state's attorney asked this question: "They took quite a lot of stuff from the house when they left? * * * Didn't they, stolen stuff?" The court promptly sustained an objection to the question and there was no further objection or motion directed to the court. State v. Hepperman, 349 Mo. 681,162 S.W.2d 878, 888. The other assignment is that the court erred in refusing to discharge the jury when Officer McGauley testified: "Q. And did Elder confess to you that he had burglarized the Bauer residence? A. Yes, that and others." We do not find this precise answer in the record but in questioning the police officer as to why he went to the defendant's residence the officer said: "Mr. Montgomery was implicated in different burglaries over the city." Upon objection the state's attorney agreed that the answer should be stricken and the court sustained the objection to the question and instructed the jury to disregard it. The court did refuse however to declare a mistrial. Subsequently the state's attorney asked Officer McGauley: "Did you ask him about other burglaries? A. Yes, sir." After some wrangling between counsel but without specific objection the court sustained an objection to the question. But assuming that the questions set forth in the motion or substantially similar improper questions had been asked it does not follow that the defendant is entitled to a new trial. We have pointed out that as to the first question there was but an objection and no request for further action by the court. As to the second question, Elder is the defendant's brother-in-law and was his co-defendant in this case. It was Elder who, being caught in the act of a burglary on the same night, informed the police that the defendant had burglarized the Bauer residence. In redirect examination of Officer McGauley, after the court had refused to discharge the jury, counsel for the defendant and counsel for the state were wrangling and bickering as to whether the witness could testify concerning the custom or lack of custom to handcuff a prisoner (here the defendant) when he was confronted with his victim (here Mr. Bauer) and the officer, without objection, in answer to a question as to the custom said: "He (the defendant) was confronted with Elder. Elder was in Lieutenant's office and Elder stated about those different burglaries." Since the defendant did not object to the statement when it was volunteered a second time he may not complain of its prejudicial effect now. State v. Peebles, 337 Mo. 973, 87 S.W.2d 167, 169. Furthermore, the merits of these two assignments and the effect of the questions may not be determined apart from their context and setting and in that connection should be considered with the seven other assignments in the motion for a new trial.
[7] These all relate to questions, conduct and argument of the state's attorney and one remark by the trial judge to defendant's counsel. But before considering them separately it must be said that they arose and were ruled upon, as were the questions in assignments ten and thirteen, in the constant bickering of counsel for the state and counsel for the defendant. In his brief the Attorney General criticizes defendant's counsel but the outstanding characteristic of this trial was the useless, pointless bickering of both counsel for the defendant and counsel for the state. Neither addressed the court or made an objection to the court until after engaging in pointless, personal haggling and wrangling and the assignments of error relating to the conduct of counsel, their questions and their argument may not be considered or weighed apart from that fact. *Page 468 
[8] Assignments eleven, twelve and fourteen relate to statements made by the state's attorney when he offered Lieutenant Sinclair as a witness in chief although his name had not been endorsed as a witness, to "these constant remarks * * * out of the side of his mouth" and to his reference, in his argument, to "other jobs" committed by the defendant. In each instance the precise remark or statement is not found in the record, and in each instance the remark or statement probably referred to arose in the course of counsels' bickering and when finally objected to was sustained. Compare State v. Jones, 306 Mo. 437, 268 S.W. 83. As to two of the matters there was no request for censure or a reprimand, State v. Jones, Mo.Sup., 256 S.W. 787 and, in all the circumstances, it may not be said that the trial court abused its discretion in failing to administer a rebuke to the state's counsel. State v. Finkelstein, 269 Mo. 612, 191 S.W. 1002; State v. Murray, 316 Mo. 31, 292 S.W. 434.
[9] In assignment sixteen it is claimed that the court erred in permitting state's counsel to ask the defendant these questions: "Were you ever arrested in Buffalo, New York? How many times were you arrested out there?" We are unable to find the second question in the record and the defendant affirmatively answered the first question without objection to either the question or the answer and, of course, is in no position to object to it now. State v. Preston, Mo.Sup., 184 S.W.2d 1015, 1017.
[10] Assignment fifteen sets forth five specific questions which the defendant claims went beyond the scope of his direct examination and were therefore prejudicially erroneous. Assignment seventeen sets forth seven questions which the defendant contends were improperly propounded to his wife. We are unable to find the questions, "You and Elder have been in trouble together before, haven't you?" and "What was your relationship with Dolores Massey?" or "What did you tell Ray Singelton about this case?" He was asked: "What is your girl friend's name?" but as soon as the court had an opportunity, in the bickering, the court sustained an objection to the question and there was no request for further action by the court. Previously the state's attorney had asked him these questions: "At the time, (when he was renting a room on Russell Avenue) Mr. Montgomery, weren't you keeping company with another other young lady besides your wife?" and "Were you keeping company with a young lady at the time you took the room on Russell?" There was no objection to the second question and he answered "No." There was an overruled objection that the first question went beyond the scope of the direct examination but since he subsequently answered the question without objection we cannot say that it was prejudicial. Furthermore, he had just testified, without objection, that he had rented a room on Russell Street (where, as we understand, the iron bar was found) and gave as his excuse that it was "a sleeping room." The court sustained the objections to the questions to the defendant's wife concerning his "girl friend" and who lived at 2727 Russell. However on redirect examination as well as on cross-examination she testified, without objection, that he maintained a room other than in their home and gave as a reason for his doing so the fact that she was in Illinois at the time having a baby. Defendant's counsel first objected to the question "When did you marry the defendant, Mrs. Montgomery?" but subsequently counsel said: "Your Honor if (he) is trying to show this woman is a real wife we don't object to that. We admit this wife, if he is trying to attack that kind of a woman" and so we are unable to see that the question was prejudicially erroneous. She had testified on direct examination that she was his wife and the question was therefore not outside the scope of her direct examination. We are unable to find the question, "You know what the penalties for perjury are don't you?" However these questions were asked and answered but there was no objection to them: "Mrs. Montgomery, it is the truth that you don't know how the silver got in your house? A. Yes. Q. You are under oath and you *Page 469 
say you don't know how that silver got in your house? A. I don't" We are unable to find the question, "Elder and Montgomery were convicted together before, weren't they?" She was asked whether she was Elder's sister but there was other evidence of the fact and he was called as a witness for the defendant. In any event the nature and extent of the cross-examination of the defendant's wife was discretionary with the trial court and we are unable to say upon this record that the court abused its discretion. State v. Flinn, Mo.Sup., 96 S.W.2d 506, 512. All in all these assignments of error are directed to the misconduct of the state's attorney and, in the circumstances, we are unable to say that they were prejudicial to the rights of the defendant. State v. Davit, 343 Mo. 1151, 1162, 125 S.W.2d 47, 54.
[11] The eighteenth assignment is that the court erred in stating to defendant's counsel that the court would cite counsel for contempt if he did not desist from further objection to the line of interrogation employed by the state's attorney in the course of his cross-examination of the defendant's wife. On direct examination she had testified that she did not know how the stolen silverware got in their living quarters. The state's attorney cross-examined her at length on this subject and the remark was made in this setting:
[12] "Q. Did you bring it home, Mrs. Montgomery? A. No.
[13] "Q. And you don't know whether or not your husband brought it home? A. No.
[14] "(Defense Counsel): Your Honor, I am going to object again to counsel * * *
[15] "The Court: The objection is overruled. Keep your seat Mr. * * *. I will have to fine you for contempt if you keep this up."
[16] The court may have the power to punish counsel for contempt, even in the presence of the jury, if necessary, 23 C.J.S., Criminal Law, § 995, p. 356, and yet the court's mere remark, in some circumstances, might constitute prejudicial, reversible error. But in this instance, in view of the conduct of defendant's counsel and of the state's counsel throughout the course of the trial and in view of the fact that there is but little, if any, doubt as to the defendant's guilt and his inevitable punishment, we cannot say that the mere statement was prejudicially erroneous. State v. Hudson, Mo.Sup., 215 S.W.2d 441; State v. Headley, Mo.Sup., 18 S.W.2d 37; State v. Henderson, 356 Mo. 1072, 204 S.W.2d 774; 23 C.J.S., Criminal Law, § 989, p. 340.
[17] There is no error upon the record proper and the judgment is affirmed.
[18] WESTHUES and BOHLING, CC., concur.