**STATE of Missouri, Respondent,**

v.

**Ray Lee JOHNSON, Appellant.**

No. 44832.

Supreme Court of Missouri.

Division No. 2.

Feb. 13, 1956.

yo

Appellant pro se.

John M. Dalton, Atty. Gen., W. Don Kennedy, Asst. Atty. Gen., for respondent.

EAGER, Presiding Judge.

Defendant was indicted, with two others, for robbery in the first degree by means of a dangerous and deadly weapon. Sections 560.120 and 560.135 RSMo 1949, V.A.M.S. The court appointed counsel for him, and also granted him a severance. On trial he was found guilty, and thereafter was sentenced to a term of ten years in the penitentiary. He has appealed therefrom.

The defendant has filed here, pro se, sundry miscellaneous papers, none of which could by any conception serve as a brief under our rules. His appointed counsel, however, filed a motion for new trial containing sixty-three assignments of supposed error before retiring from the scene, and we shall proceed to consider such of those assignments as are alleged in sufficient detail and particularity under Rule 27.20 of this court. Many of these will be considered in analogous groups. The transcript is voluminous.

We need not recite the facts here in great detail. Since most of the assertions of error concern the admission or exclusion of evidence, certain facts will necessarily be referred to later. Defendant was positively identified as the first of three men who entered the office of the Altmayer Real Estate Company, all carrying pistols, about 5:30 p. m. on February 12, 1954, and robbed Mr. Altmayer personally as well as the office safe. The location was in a more or less suburban area of St. Louis. There was evidence that defendant personally and at gun-point demanded the money, forced Mr. Altmayer to lie on the floor and took his personal money, and that he later raked out the contents of the safe, including a substantial amount in coins as well as paper money, and put it in his pocket. The others took certain other things, but did not go to the safe. After the robbery the men ran, first to a car which they did not enter, and then into the surrounding neighborhood. While fleeing, one of them stopped and fired a shot in the general direction of Mr. Altmayer who had attempted to follow them. The police arrived in a matter of minutes. Defendant and one Paul Cramin (a co-defendant) were arrested while walking along a street about five blocks from the scene of the holdup at approximately 6:45 p. m.; the arresting officer testified that as he approached defendant, the latter pulled a handful of change from his pocket and threw it into a vacant lot or area, and that he recovered some of the coins. No weapons were found on defendant or Cramin. Merl Sack, the third man indicted, was found by other officers about 6:30 p. m. in the garage of a private home in the general neighborhood. He was lying on top of an over-head door which was (of course) in a raised position. All three men were taken back to the place of the robbery to be viewed by Mr. Altmayer, his daughter Catherine, and a salesman, all of whom had been present at the robbery. Defendant and Cramin then had no hats. All three were also viewed later by Mr. and Miss Altmayer at the police station. The money found on defendant, both change and currency, was preserved. The next morning a builder-carpenter, who had about completed a new house in the same neighborhood, found on a wooden sawhorse in the basement of the house two gray hats, a .38 caliber Smith and Wesson revolver and a .32 caliber Colt automatic pistol; these were lying partly on his jacket. The house had not been locked, and the articles had not been there when the witness left about 4:30 on the previous afternoon. He immediately, and without touching these articles, called the police, who also found certain partly burned papers, including checks, a billfold, and the lining of a hat. The latter object was on top of a heating duct, as were also the billfold and some of the partly burned papers. Photographs of these objects were made in their original locations and identifying initials or markings were placed on them. Both guns were found to be loaded, the revolver with five live shells and one empty, the automatic with seven live shells.

Approximately two and a half hours after the arrest of Sack, police officers went back to the garage where he had been arrested and found a .22 caliber revolver, fully loaded, lying on a rafter near where he had been perched. On the morning after

the robbery, the owner of the garage in which Sack was found, noticed, while piling some lumber, a leather folder or pocketcase on top of the concrete block wall of the garage. He called the police without disturbing it, and the officers then found also a man's wrist watch behind a joist above the over-head door, some three or four feet from where the pistol had been found.

At the trial the defendant testified, and denied all participation in the robbery. He testified that he was elsewhere at the time of the robbery, with some corroboration from members of his family and a friend of the family. He also testified: that police officers struck him at various times and hung him over a door (all of which was specifically denied by the officers); that he requested a paraffin test of his hand; that he did not state that he ran from the scene of the robbery, as certain of the officers testified; that he was questioned until he finally said, "I don't remember; I don't know nothin' "; that he worked for most of the money he had when arrested, and won the rest playing poker in a tavern in East St. Louis on the previous night.

■ Defendant's motions for acquittal were properly overruled. The facts already recited show beyond all question that there was ample evidence from which the jury could find that defendant was one of those who perpetrated this robbery at gunpoint and by putting the victims in fear of immediate injury.

■ Certain assignments, as that the verdict was against the evidence and against the law, do not merit any consideration under Rule 27.20. The same is also true of the assignment that Instructions 1-8, inclusive, did not correctly and fully state all the law, were misleading and confusing, and assumed facts. Such blanket objections to instructions in a criminal motion for new trial will not be examined. State v. Jordan, Mo., 235 S.W.2d 379; State v. Murray, Mo., 280 S.W.2d 809, and cases there cited. The same is true of the general assignment on the admission of evidence.

■■ Specific complaint is made of the admission in evidence of the .38 caliber Smith and Wesson revolver (Ex. No. 1) found in the basement of the new house, as related above; the objections were and are, in substance, that it was not sufficiently connected up with the defendant or with the crime, that it was irrelevant and immaterial, and that its admission was prejudicial. The exhibit was certainly not irrelevant; it was sufficiently identified as the gun which defendant carried in the robbery to make it admissible. Counsel complained at the trial that Mr. Altmayer merely said that it "looked like" the gun, but actually the identification was stronger; the witness said that the front part (the handle being covered with the hand) looked "very much" like the revolver in defendant's hand, and that it was "very similar"; identification need not always be wholly unqualified in order to make evidence admissible. Wise v. Standard Oil Co. of Ind., Mo.App., 198 S.W.2d 1014, 1016, and cases cited. When we consider also the fact that this exhibit was found the next morning in a neighboring basement, wholly unexplained, along with a billfold and various partly burned papers which were positively identified as having been taken in the robbery, the admissibility of the exhibit is clear. The weight of the identification was for the jury.

■ Exhibits 2, 3, 4 and 5 were photographs of the building where the robbery occurred and its surroundings; the objection to these is that they do not correctly portray the scenes as existing at the time of the robbery. We suppose this refers to the fact that the pictures were taken subsequent to the robbery and under different lighting conditions. The jury had all the facts, including these objections, and any such objection could only go to the weight of the evidence. The same is true of a similar objection to Exhibits 27, 28, 29 and 30, being photographs of the outside and inside of the garage where Sack was found and the house adjoining it, and to Exhibit 17, the house in the basement of which the various objects were found. These photographs were taken the next morning before

any material changes could possibly have been made. Similar assignment of error is made as to Exhibits 7 and 8, being photographs of the car to which the robbers supposedly ran, but we cannot find that these were received in evidence. The same ruling would, in any event, apply. All such assignments are denied.

 Error is also predicated on the admission into evidence of various articles: (A), found in the basement of the new house, along with the revolver, Exhibit 1, as follows: a gray hat identified as defendant's (Ex. 9); a gray hat identified as Cramin's (Ex. 10); a group of partly burned checks and other papers (Ex. 11); a billfold (Ex. 12); a single partly burned check (Ex. 13); shells taken from the .38 caliber revolver (Ex. 23); a .32 caliber Colt automatic (Ex. 24), and shells from that automatic (Ex. 25); and (B), articles found in the garage after Sack's arrest, as follows: the .22 caliber revolver found on a rafter (Ex. 31); the shells taken from it (Ex. 32); the leather folder or date book found by the owner the next morning (Ex. 15); and the wrist watch, also found the next morning (Ex. 14). The assignment of error now made to all of these is that they were not shown to have belonged to or to have been in the possession of the defendant or the codefendants, nor to have been used in the crime, and that they were immaterial and prejudicial. The entire assignment is rejected. The hats were sufficiently identified, in and of themselves, to be admissible; the weight and value of the evidence was for the jury. The billfold, checks and other papers found in the basement were positively identified by Mr. Altmayer; in fact, the billfold still contained some of his personal cards. Here a group of objects was thus left surreptitiously in the basement of an unoccupied house under circumstances indicating an intentional concealment or abandonment, and some of these have been specifically connected up with the robbery and with the defendant. We think that under such circumstances all of them were admissible. The objects found in the garage where Sack was arrested (Exs. 14, 15, 31 and 32) come within the same category; the watch and leather folder were positively identified by Mr. Altmayer as his, and as objects taken in the robbery; a witness testified that the gun looked like the gun the second man was carrying, which was a black gun with a short barrel. All of these objects were obviously so placed in the garage as to attempt to effect a concealment. Sack was identified as one of the robbers. Most certainly an inference might reasonably have been drawn by the jury that he placed these objects there,—up near the roof where he was found. Apparently Exhibits 31 and 32 were not formally offered or received in evidence, but they were discussed at length before the jury, so we rule their admissibility. The objection that Exhibits 31 and 32 were found two and one-half hours after the arrest of Sack goes merely to the weight and value of the evidence. All the facts and circumstances furnished evidence of a criminal conspiracy or confederation, participated in by three men, and defendant was positively identified as one of the conspirators. Under these circumstances, the acts of any one are admissible against all when performed during the continuation of the conspiracy, and certainly including attempts at concealment of person or evidence, flight, attempts to avoid exposure, and even admissions. See State v. Kennedy, Mo., 108 S.W.2d 384; State v. Schnelt, 341 Mo. 241, 108 S.W.2d 377; State v. Costello, Mo., 252 S.W. 727; State v. Reich, 293 Mo. 415, 239 S.W. 835; State v. Swindell, Mo., 271 S.W.2d 533; State v. Cataldo, Mo., 268 S.W.2d 836. And, of course, the proof of a "common criminal purpose, acted upon by the parties," is sufficient to show a criminal conspiracy. State v. Strait, Mo., 279 S.W. 109, 113. This principle also permits evidence of the arrest of Sack and the circumstances surrounding it, which is also complained of. Error is also assigned to the admission of photographs of the objects found in the basement (Exhibits 16 and 19–22, incl.) because some one is shown pointing at the objects thereby placing "undue emphasis" on the scene. If the object itself is admissible, we see no objection to the necessary emphasis in pointing it out

at the very place where it was found; as to Ex. 16, the objection is added that the articles were never shown to have been in defendant's possession. This objection has been covered in the discussion of the admissibility of the articles themselves.

██ Certain money was taken from the defendant after his arrest, and this was offered and received in evidence at the trial. Error is assigned in that this money was not shown to be the same money taken in the robbery. The envelope produced contained approximately seventy-five coins from half-dollars to pennies, as well as currency; the cash taken in the robbery included a somewhat larger amount of change. There was sufficient similarity in the money and a sufficient coincidence in time to make the money so produced admissible. There was also evidence that defendant threw away a handful of change immediately prior to his arrest, which is a significant connecting link. The determination of actual identity was for the jury. The amount was immaterial; this is not a larceny case.

██ Defendant was taken to the City Hospital and examined there on February 15, 1954, while in custody. On rebuttal, after defendant had testified that he was beaten and mistreated by the police, the record of this examination was produced, offered and admitted in evidence, merely to show that there was "no evidence of injuries"; the other notations were purely formal. This record (Ex. 34) was produced by the record clerk who testified, partly in and partly out of the presence of the jury, that it was kept in the usual and ordinary course of business and that she was the custodian. The sole assignment of error now raised is that the exhibit was hearsay; at the trial, counsel first said specifically that he was not "objecting on the basis of the exception to the hearsay rule because I think the Statute specifically covers that aspect"; and he then proceeded with other objections. Later, he sought to add the objection of hearsay. There may be some doubt of the present status of this hearsay objection, but we prefer to rule this question on the ground that the admission of this evidence was in no way prejudicial to defendant, if, in fact, its admission was erroneous. We do not find it necessary to rule on the qualification of this record under Sections 490.660–490.690 RSMo 1949, V.A.M.S. This evidence bore solely upon a purely collateral issue, and not upon the question of identification or guilt. There was not even an issue as to the admissibility of a confession, for no confession was offered. There was testimony as to certain oral statements allegedly made by defendant, but no objection was made to these because of claimed threats, intimidation or coercion; rather, defendant contented himself with giving his own version of the answers and testifying to the alleged mistreatment. Under these circumstances we are convinced that the admission of the record was not prejudicial to the defendant.

██ The same principle would and does apply to the admission of photographs of defendant (front and back) in the nude, taken three or four days after his arrest, and while in custody, for the purpose of showing that there were no apparent injuries. These (Ex. 37) were offered in rebuttal, after defendant had testified that he had been beaten and hung over a door shortly after his arrest. The assignment of error now made is that the use of these photographs violated his right of "privacy," that they were taken without his consent, and that their use was a violation of his constitutional privilege against self-incrimination. Any absolute "right of privacy" usually becomes somewhat illusory upon arrest by the lawful authorities; as an independent objection here that "right" hardly merits discussion. We shall consider it as a part of the constitutional objection. The evidence was that defendant submitted to the taking of the photographs without objection, removing his clothing for that purpose; no express request or consent was shown; but there was no evidence of force or coercion exerted to procure the pictures. Defendant was handcuffed for the trips from the district station to headquarters and back. The trial court held a preliminary hearing outside the presence of

the jury, and thereafter admitted the photographs. It has been held that a photograph taken while in custody is admissible, even for purposes of identification, as against the objection made here. Shaffer v. United States, 24 App.D.C. 417, certiorari denied 196 U.S. 639, 25 S.Ct. 795, 49 L.Ed. 631. That case has been cited at various times with approval. Fingerprinting has been sanctioned. United States v. Kelly, 2 Cir., 55 F.2d 67, 83 A.L.R. 122. Evidence of blood on the body of a defendant has been held admissible. McFarland v. United States, 80 U.S.App.D.C. 196, 150 F.2d 593. Evidence that a blouse fitted defendant when he tried it on has been held admissible. Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021. Apparently none of these cases were based on consent. But, even if the constitutional objection were otherwise valid here, which we do not hold, the assignment of error cannot be sustained. The exhibit, affecting only a collateral issue as it did, could not have been prejudicial. We also note that the defendant, during his own re-direct examination, took off his coat, rolled up his shirt sleeve, and exhibited his bare arm to the jury, in order to show an injury supposedly caused by police brutality on the night of his arrest. By this conduct we think that he opened the door to the admission of evidence in rebuttal to show that there were no injuries on his body, whether the evidence be by photographs or otherwise; in other words, he waived the present objection.

■ Complaint is made of the admission of Ex. 33, being a record of the money in the safe made by Miss Altmayer. It was never admitted. Complaint is further made that she was permitted to testify from figures on the writing without proper foundation and thereby to refresh her recollection. Miss Altmayer was treasurer of the Realty Company. It appears that she, herself, had on the evening of the robbery made up a record showing what cash had been in the safe immediately prior to the robbery; she brought this list with her to the trial. It was apparently made from a "tape" kept in the safe, and the cash had

been "balanced" about 5:00 p. m. She looked at this record in testifying, but was instructed not to read from it. We think its use to refresh her memory was proper. State v. Mayberry, Mo., 272 S.W.2d 236, 240; State v. McCormack, Mo., 263 S.W. 2d 344. The testimony involved not only the total amount of cash, but the various denominations of bills and coins. Defense counsel at the trial sought to distinguish between past recollection recalled and present recollection refreshed; those distinctions are fully discussed in State v. Bradley, 361 Mo. 267, 234 S.W.2d 556. The use of a proper memorandum is permissible in either case, and much rests in the discretion of the trial court; there is certainly nothing in this record from which we should find that this discretion was abused. The contention is overruled.

■ Complaint is made that the court erred in refusing to strike testimony of Officer Willmering "concerning alleged statements contained in a police report," as not responsive to the question. The respondent's brief says that there was no such testimony. The only reference we find to anything of that kind is a question of the prosecuting attorney to this witness asking by "what method" he had recalled, since the previous day, certain words in an oral statement of the defendant; the question was objected to at the time as "improper," and the objection was overruled. The answer was "I was reading the report." The answer was certainly responsive, and no other point is made here.

■ Defendant complains also that his counsel was erroneously restricted in the cross-examination of "Police Officer witnesses" concerning defendant's request for a "paraffin test." The assignment is very vague and could well be disregarded. The court did sustain an objection to such a question asked Officer Willmering, after much discussion; this witness was not familiar with the test. Another officer (Sgt. Murphy) testified: that he was familiar with the test, but that it was obsolete, because nitrates might be present on the hand from many sources; also, that defendant

was not given such a test. Another officer (McDonald) was asked whether defendant had requested the test, and answered that he did not know. If Officer Willmering had been permitted to answer and had done so in the affirmative, the evidence would merely have been corroborative of the statement of defendant himself who testified that he did request the test; and his evidence was wholly uncontradicted. The whole question was largely incidental. We certainly find no prejudicial error in the ruling.

█ Complaint is made that the court erred in refusing to strike the testimony of Grace Ryan that she loaned her car to co-defendant Cramin. No objection was made to the testimony when given, and defendant's counsel cross-examined her. The motion to strike was made after the witness was excused. Under such circumstances the trial court will not be convicted of error for refusing to strike the evidence. State v. Peebles, 337 Mo. 973, 87 S.W.2d 167; State v. Lehman, 175 Mo. 619, 75 S.W. 139; State v. Young, Mo., 24 S.W. 2d 1046; State v. Cain, Mo., 37 S.W.2d 416; State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878.

█ The last assignment is that the court erred in refusing to grant a mistrial when Officer Murphy, on cross-examination, testified that defendant "refused to answer certain questions," because the statement was not responsive to the question, was a conclusion, and was a violation of defendant's constitutional right to refrain from making any statement. Prior to this time counsel for defendant had been told by the trial prosecutor in discussions before the court that defendant had in fact declined to answer various questions; he had thus been put on notice that he might get such an answer if he pressed the matter. During this rather extensive cross-examination, counsel for defendant made various detailed inquiries about the questioning of defendant, asking the witness when he last questioned defendant on the night of his arrest, whether he was the senior officer on duty and was therefore "more or less presiding," whether he was present when others questioned defendant later, whether he took part in that, and where he was while the others did so; the witness answered the last inquiry thus: "I was in and out of the office; I was satisfied that the man didn't want to make any further statement. He told me not." This is now seized upon as a voluntary invasion of defendant's right to remain silent. As we read the record, the answer cannot reasonably be construed as a statement of a refusal to answer questions. The witness had already testified to certain statements made by the defendant, and that he, Murphy, had questioned him for a period of half an hour or an hour; the whole context of this testimony was that defendant had made statements and did not wish to make any *further* statement. The defendant himself adopted the same view and testified that he was questioned until he said, "I don't remember; I don't know nothin'." Certainly that is the equivalent of a wish to make no further statement. In view of defendant's own testimony, that of the officer could not have been prejudicial. The answer was merely an understandable and logical explanation by the witness of where he was at the time and why, in answer to detailed and somewhat repetitious questions. This matter, also, involved merely a collateral issue. The case did not depend on statements or lack of statements of the defendant, for there was positive evidence on the issue of guilt. We note also that in the present assignment only the drastic request for a mistrial is preserved. At the trial counsel also asked that the statement be stricken and the jury instructed to disregard it, but error has not been preserved in the motion for new trial on those requests. A trial court has much discretion with reference to a mistrial, and certainly we find no abuse of such discretion here. The assignment is overruled.

█ Among the sundry papers which defendant has filed here, pro se, are three affidavits. Two of these are a mere rehash of parts of the testimony on behalf of defendant; the other, executed in the

penitentiary, purports to be a confession of Merl Sack that he committed the robbery with two accomplices, but exonerating defendant of all participation. We decide a case here solely on the record made in the trial court and upon assignments preserved in a motion for new trial. The affidavits are disregarded. If any such facts be true, the situation can only be presented in an application for executive clemency. State v. Sadowski, Mo., 256 S.W. 753; Figueroa v. Saldana, 1 Cir., 23 F.2d 327. They play no part in an appeal.

The indictment sufficiently charged the crime of first degree robbery by means of a dangerous and deadly weapon; the verdict, judgment and sentence are sufficient, and allocution was duly accorded. The case was very ably defended by appointed counsel, although defendant seems not to have fully appreciated that fact. We find no reversible error and the judgment will be affirmed. It is so ordered.

All concur.