STATE v. ERNEST COURTNEY, Appellant.—No. 40218.—202 S. W. (2d) 72.

Division Two, May 12, 1947.

*Shepard R. Evans* and *I. Joel Wilson* for appellant.

*J. E. Taylor,* Attorney General, and *Aubrey R. Hammett, Jr.,* Assistant Attorney General, for respondent.

532

TIPTON, J.—In the circuit court of the city of St. Louis, Missouri, appellant was convicted of murder in the first degree for the killing of Frank Adams, and his punishment was assessed at imprisonment in the state penitentiary for his natural life. He has duly appealed from that sentence to this court.

Appellant has filed no brief in this court; we will, therefore, decide the points raised in his motion for a new trial. His first five assignments of error deal with the trial court's refusal to grant him a continuance after an information had been substituted for an indictment. At the beginning of the trial, but prior to the time the jury was sworn to try the cause, the court informed counsel for appellant that the State had called its attention to a defect in the indictment. The indictment stated that deceased died on May 23, 1945, when, in fact, he died on May 22, 1945. In view of this fact, the court informed appellant that it was quashing the indictment and at the request of the State was giving it leave to file a substituted information. Appellant pleaded surprise and requested the court to grant a continuance to allow him to make inquiry into the matter.

The record shows the following:

"The Court: Well, I don't think there is any surprise to it in a real sense. It is just a correction of a date.

Mr. Evans: Your Honor, we assure you it is a surprise in a real sense.

The Court: In what real sense? What is the difference in your defense?

Mr. Evans: I am not here to disclose what the defense is.

The Court: All right; your objection is overruled.

Mr. Wilson: Well, save our exception.

Mr. Evans: Will you let us examine this paper in its entirety to see if that is the only change?

The Court: You may examine it now, and as soon as you can if you have any other objection to make you make it.

Mr. Evans: Outside of that it seems to be a copy in all particulars, but we still object.

The Court: Well, your objection is overruled."

Section 3953, R. S. Mo., 1939, reads:

"An information may be amended either as to form or substance at any time before the jury is sworn, but no such amendment shall be allowed as would operate to charge an offense different from that charged or attempted to be charged in the original information. If an indictment be held to be insufficient either as to form or substance, an information charging the same offense charged or attempted to be charged in such indictment may be substituted therefor at any time before the jury is sworn. No amendment of the information or substitution of an information for an indictment as herein provided shall cause a delay of the trial unless the defendant shall satisfy the court that such amendment or substitution has made it necessary that he have additional time in which to prepare his defense."

We cannot say that the trial court abused its discretion in not granting the appellant a continuance. State v. Golden, 353 Mo. 585, 183 S. W. 2d 109.

■ The effect of appellant's next assignment in his motion for a new trial is that the information failed to state any offense against the laws of the State of Missouri.

The information charged that the appellant "in some way and manner and by some means, instruments and weapons to this informant unknown, did then and there feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, hit, strike, beat and wound the said Frank Nicholas Adams in and upon the head and body . . . giving to the said Frank Nicholas Adams . . . one mortal wound, of which said mortal wound the said Frank Nicholas Adams then and there on the said 22nd day of May, A. D. 1945, at the said City of St. Louis, Missouri, did die."

Section 4376, R. S. Mo., 1939, defines murder in the first degree as follows:

₃ "Every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, and every homicide which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglarly or mayhem, shall be deemed murder in the first degree."

This section makes every killing that is willful, deliberate and premeditated, ■ murder in the first degree. It was not necessary to

state in the information the manner in which the deceased was killed. The information charged that the appellant "in some way and manner and by some means, instruments and weapons to this informant unknown, did . . . hit, strike, beat and wound the said Frank Nicholas Adams . . ." It was not necessary to state in the information the weapon used by the appellant in making the assault. State v. Beard, 334 Mo. 909, 68 S. W. 2d 698; State v. Rizor, 353 Mo. 368, 182 S. W. 2d 525. We hold that the information properly charged the appellant with the crime of murder in the first degree.

Appellant's next assignment of error is that "the court erred in refusing to sustain the motion of the defendant, after the first witness for the State had been sworn and stated her name, to deny the introduction of any testimony on the part of the State because of the insufficiency of said information." We have already ruled the information properly charged the appellant with the crime of murder in the first degree.

The next five assignments of error are that incompetent, immaterial and irrelevant evidence was admitted; that the court refused to admit competent, relevant and material evidence offered on behalf of appellant; that the verdict is the result of passion and prejudice; that the verdict is against the evidence and the law under the evidence; and that the verdict should have been for the appellant.

None of these assignments of error complies with Section 4125, R. S. Mo., 1939, which provides that grounds or causes for a new trial must be set forth in detail and with particularity. Since these assignments do not follow this section they are overruled.

Appellant next contends that his demurrers to the evidence should have been sustained.

We will review the evidence most favorable to the State. Frank Nicholas Adams, the deceased, operated a second hand store at 2905 Park Avenue, in St. Louis, Missouri. He purchased, sold and repaired furniture, electric irons, clocks, electrical supplies and radios. Lena Wisdom testified that she entered the store on May 22, 1945, a few minutes before 6:00 P. M., for the purpose of ascertaining if the deceased would repair a clock for her, and inquired how late he would remain open. The deceased and a colored man to whom she paid no particular attention were the only persons in the store. She left the store and went to her home, which was two blocks away, to get the clock, and returned immediately. She found the front door locked.

Henry M. Davis testified for the State that on May 22, 1945, about 6:00 P. M. he was in the rear of his store, which adjoined that of deceased, when he heard groans that sounded like they were coming from Adams' store. He finally determined they were and went to the front door of Adams' store which he found locked. There was a woman at the front door at the time. He returned to his store and could still hear groans. He then looked in the back of Adams'

store and saw Adams lying on the floor. He saw blood on Adams' face and on the floor. When the police arrived at Adams' store, they broke the glass and unbolted the door. They found Adams lying on his left side, bleeding about his head. Adams was unable to speak. The deceased's two rear pockets, where he usually kept his money and billfold, were turned inside out and no money or property was found on him.

Earl L. Schad, a police officer, accompanied Adams to the hospital in an ambulance, and Adams died there later that day. No weapons were found at the store at the time the police broke in.

Clarence Frye testified that he saw the appellant on the sidewalk in front of deceased's store on May 22, 1945, about 6:00 P. M. Appellant approached Frye as he came out of a nearby barber shop and inquired if he was the owner of Adams' store, stating that someone told him the owner of the store was in the barber shop. Frye asked if there was anything he was particularly interested in and he pointed to a radio in the window, later identified as State's exhibit 5. Later Frye saw appellant ██ walking in an alley with this radio under his arm. Exhibit 5 was identified by several witnesses as a radio in deceased's store on May 22, 1945.

Theodore E. Elhenbeck testified that on May 24, 1945, the appellant brought a radio, exhibit 5, to a pawn shop where he was a clerk and pawned it for $15.00 in the name of Earl Jack, giving his address as 2734 Market Street.

. State's exhibit 6 was a black billfold which was identified definitely by many witnesses as belonging to the deceased. The evidence shows that deceased always carried his money in this billfold, that he had no cash register or drawer in his store, and on the day of the homicide the evidence shows that the billfold contained a large sum of money. This billfold was found on the appellant when arrested. Later, the police found over $500.00 in one of appellant's shoes.

There was medical testimony that deceased died from the wound he received about his head.

The appellant testified that the money he had on him was obtained by cashing war bonds at the First National Bank in St. Louis in April, and that the bank took his name and address and mailed him the money. An officer of the bank denied that the bank ever mailed the money to a person when he cashed bonds but paid him at the time the bonds were cashed. He also testified that the bank records failed to show that the appellant cashed any bonds at that bank. In fact, the appellant was impeached on all the testimony he offered in his behalf.

The evidence is sufficient for the jury to infer that appellant took deceased's billfold and money with force and violence, which constitutes robbery in the first degree. Section 4450, R. S. Mo., 1939. State v. Moulder, 57 S. W. (2d) 1064. Since the evidence was suffi-

cient to show that appellant killed the deceased in the commission of robbery, that killing constituted murder in the first degree. Section 4376, supra, provides that every homicide which shall be committed in the perpetration of robbery shall be deemed to be murder in the first degree. The court properly overruled appellant's demurrer to the evidence.

We have examined the record proper and find no error in it. The judgment of the trial court should be affirmed. It is so ordered. All concur.