233 S.W.2d 690 (1950)
STATE
v.
TILLETT.
No. 41918.
Supreme Court of Missouri, Division No. 1.
November 13, 1950.
*691 J. E. Taylor, Atty. Gen., Will F. Berry, Jr., Asst. Atty. Gen., for respondent.
CONKLING, Presiding Judge.
In the circuit court of the city of St. Louis Will Tillett (defendant-appellant) was convicted of murder in the first degree for the killing of Elaine Tomlin. The jury assessed his punishment at imprisonment in the penitentiary for life. After his motion for new trial was overruled he appealed. Defendant has filed in this court a transcript of the entire record including a bill of exceptions containing all the evidence but has filed no brief. We therefore examine the record proper and consider the assignments made in defendant's motion for new trial. Mo.R.S.A. § 4150 and State v. Colbert, Mo.Sup. 226 S.W.2d 685.
The evidence of the State tended to prove that on May 4, 1948, about 1 p. m., Elaine Tomlin (then three years of age) was playing in front of her parents' home at 4616 McMillan Street in St. Louis, Missouri. Her brother, William Tomlin, Jr., was with her. When Elaine's mother looked for her an hour or two later Elaine could not be found. The brother, aged six, later disclosed that a man (later identified as defendant) had approached the children as they were playing and offered to buy them some ice cream. Defendant led the children into an alley and gave William Tomlin, Jr., the money to go buy ice cream but when the boy returned the defendant and his sister, Elaine, had disappeared. An intensive search for Elaine was conducted by the police but the child was not found that day. About 8 a. m., on the following day Elaine's body was found stuffed into a dog house in a garage about a block away from her home and across the street.
After defendant's arrest he confessed the crime. He twice took the police officers to the garage where Elaine's body had been found in the dog house. When they reached the neighborhood defendant indicated and pointed out the particular garage where the body of Elaine had been previously found. On one of those trips he stated fully what had occurred; that he took Elaine to the garage, threw her on the ground and attempted to have sexual intercourse with her, but failed to do so; that "when she started hollering, I put one hand over her mouth and the other hand over her throat"; that he was on the ground with her for about half an hour; that "he had killed Elaine Tomlin, that he beat her on the head and choked her"; and that when he realized she was dead he pushed her body "into that dog house over there", and covered it up with an old carpet.
Certain witnesses called by the State testified to the peculiarity in defendant's dress and walk and that defendant at the time of the offense was in the vicinity of the scene of the crime. One witness saw defendant near the scene of the crime at the above time with a little girl. Other witnesses testified to various admissions and confessions by defendant. While at the garage defendant repeated the confession (first made at the police station) in the presence of police officers and of four persons who lived nearby. The medical testimony established that the cause of death was suffocation. It also corroborated defendant's statement that he had attempted to have sexual intercourse with three year old Elaine Tomlin.
Defendant stood upon the testimony presented by the State, and offered no testimony whatever. Without any question the State's proof was sufficient to prove the crime and the defendant's guilt as charged in the indictment. The defendant's eleventh assignment in his motion for new trial that the verdict was against the weight of the evidence is too indefinite to conform to Mo.R.S.A. § 4125.
*692 The first and third assignments in defendant's motion for new trial, that the court "erred in overruling the objections of defendant to the questions asked by the Circuit Attorney of the State's witnesses," and erred in "sustaining the objection of the Circuit Attorney to questions asked of witnesses by Defense counsel" are so general and indefinite that they present nothing for our review and consideration. Mo. R.S.A. § 4125, State v. Courtney, 356 Mo. 531, 202 S.W.2d 72, 74, State v. Montgomery, Mo.Sup., 223 S.W.2d 463, 465.
Defendant's second assignment that the court erred in overruling "the objection of defendant's counsel to the introduction of statements made by defendant at the time of his arrest", is likewise insufficient under Mo.R.S.A. § 4125, which requires that the specific grounds for new trial be set forth in detail and with particularity. Nothing is here presented for review. No reason is assigned. In any event, the words "at the time of his arrest", as quoted above in defendant's second assignment clearly refer to statements made to witnesses Austermann and White. Examination of the record before us shows that in each instance there was no objection made to such testimony. The contention is clearly without merit.
The fourth and fifth assignments of defendant's new trial motion preserve for review but one question: Was there sufficient substantial evidence adduced by the State to require the submission to the jury of the question of defendant's guilt. We have ruled above that there was. It would serve no useful purpose to further elaborate the revolting details of the attack upon and murder of this three year old girl. Prior to the admission of any testimony as to defendant's confession or any statement made by defendant the trial court, out of the hearing of the jury, conducted an extensive hearing as to the voluntariness of such confession and statements. After hearing all the testimony upon that question, including the testimony of defendant, the trial court admitted the confession and various statements of defendant for the jury's consideration. All of that testimony upon the hearing as to voluntariness has been carefully examined. The fact that the record does not affirmatively show that before making the confession and statements defendant had been advised of his right to counsel, as contended in his tenth assignment, does not render the confession involuntary. State v. Pippin, 357 Mo. 456, 209 S.W.2d 132. A confession is not rendered involuntary because a defendant is under arrest when questioned about a crime. State v. Pillow, Mo. Sup., 169 S.W.2d 414, and cases cited. The trial court did not err in ruling the admissibility of the confession and statements of defendant.
In the sixth and eighth assignments in his new trial motion defendant complains the court erred in receiving the testimony of William Tomlin, Jr., because of his age and because it "tended to prejudice and inflame the jurors against the defendant." If testimony is otherwise admissible, that it may tend to prejudice and inflame the jury against a party does not render it inadmissible.
But, because of the age of William Tomlin, Jr., did the court err in receiving the testimony of this boy? This court but recently considered this question in State v. Jones, Mo.Sup., 230 S.W.2d 678, 680. In that case we held, "There is no precise age at which a child can be considered competent or incompetent. In each case the trial judge is to determine by appropriate questions the competency of the child offered as a witness, and his decision can only be set aside where he has abused his judicial discretion." We there re-stated the rule that the four fundamental elements required to be present to make a child of tender years competent to testify were, "(1) `Present understanding of or intelligence to understand, on instruction, an obligation to speak the truth; (2) mental capacity at the time of the occurrence in question truly to observe and to register such occurrence; (3) memory sufficient to retain an independent recollection of the observations made; and (4) capacity truly to translate into words the memory of such observation.'"
*693 A portion of the examination of this witness was as follows:
"Q. How old are you William? A. Six years old. * * *
"Q. Do you go to church? A. Yes, sir.
"Q. Which one? A. Sunday school church.
"Q. Do you know who God is? A. Yes.
"Q. Who is God? A. Jesus.
"Q. And where is Jesus? A. Up in heaven.
"Q. Do you go to school? A. Yes, sir.
"Q. Do you know what it is to tell a lie? A. Yes, sir.
"Q. And what happens when you tell a lie? A. You get put in jail.
"Q. Does anyone else punish you? A. My mother.
"Q. Did you ever tell a lie? A. One time I did. My mama whipped me.
"Q. Now, your mama doesn't like for you to tell lies. What does God think about a boy telling lies? A. If you tell a lie, He will punish you.
"Q. If you tell a lie, He will punish you. You believe that? A. Yes. * * *
"Q. And how do you know that you are telling the truth, because your mother would punish you if you didn't tell? A. Yes.
"Q. I see, and who else would punish you? A. God. * * * *
"Q. And do you know what it is to tell a lie? A. Yes, sir.
"Q. What happens when you tell a lie? A. You get put in jail.
"Q. I can't hear you, Will. A. I say, you get put in jail.
"Q. Do you believe in God? A. Yes, sir.
"Q. Who is God? A. Jesus.
"Q. And where does Jesus live? A. Up in heaven. * * *
"Q. What else happens to you if you tell a lie? A. God will punish you."
Before permitting the jury to hear the testimony of this boy the court, and counsel for defendant and the State, asked many qualifying questions in an extensive preliminary hearing. The trial court thereafter overruled defendant's objections and the jury heard all of his testimony. We have above quoted some of the questions and answers. Out of the jury's presence the trial judge observed, in ruling, that "he is a bright boy." The entire testimony of William Tomlin, Jr., has been carefully examined and considered. From all of his testimony it clearly appears he was an intelligent boy. And we find nothing of any consequence in his examination which detracts from his competency. His answers to the questions asked him reveal a capacity to observe and register the events about which he testified. He had an independent recollection of those events and his testimony clearly demonstrated his capacity to relate in his own words his memory of what he testified he saw. The trial court did not abuse his discretion in permitting the boy to testify. Burnam v. Chicago, Great Western R. Co., 340 Mo. 25, 100 S.W. 2d 858, loc.cit. 862.
Defendant's ninth assignment in his new trial motion is that the trial court erred in not directing the acquittal of defendant because defendant was held in custody "far beyond the statutory time" (20 hours) without formal charge having been filed. We assume the statute to which defendant referred is R.S.Mo.1939 § 4346, Mo.R.S.A.
No case is called to our attention, and our research reveals none, which indicates that such fact, if true, is a ground for a directed acquittal upon trial. In State v. Higdon, 356 Mo. 1058, 204 S.W.2d 754, this Court en Banc (two of the judges dissenting) held that the mere fact that one was held in custody more than twenty hours did not render involuntary a confession thereafter made. And in this case the State's case is not solely dependent upon the confession of defendant. There is independent evidence tending to establish defendant's guilt. The assignment made is overruled.
It is finally assigned by defendant that the verdict of the jury "was such as to constitute a cruel and unusual punishment". *694 It is sufficient answer to state that the punishment assessed is the minimum under the finding made in the jury's verdict that defendant was guilty of murder in the first degree. R.S.Mo.1939, § 4378, Mo.R.S. A. The facts which the jury considered speak for themselves.
The indictment, verdict and judgment are in form and sufficient. Allocution was granted. There are no deficiencies in the record proper. The judgment appealed from must be affirmed. It is so ordered.
All concur.