## STATE v. McBRAYER.

No. 43722.

Supreme Court of Missouri.

Division No. 1.

July 12, 1954.

Waldo P. Goff, St. Joseph, for appellant.

John M. Dalton, Atty. Gen., Grover C. Huston, Asst. Atty. Gen., for respondent.

DALTON, Presiding Judge.

Defendant was charged, tried and convicted of molesting a minor (a 12 year old female child) under the provisions of Section 563.160 RSMo 1949, V.A.M.S. and his punishment was assessed by the jury at three years imprisonment in the State Penitentiary. He has appealed and filed a full transcript of the proceedings and evidence offered in the trial court, but he has not favored us with a brief and we shall look to his motion for a new trial for the assignments of error and review all points properly saved therein. State v. Courtney, 356 Mo. 531, 202 S.W.2d 72, 73; State v. Tillett, Mo.Sup., 233 S.W.2d 690, 691; Section 547.270 RSMo 1949, V.A.M.S.

In his motion for a new trial defendant has assigned error on the court's action (1) in refusing to direct a verdict for him as requested at the close of all the evidence; (2) in the admission in evidence of exhibit "A", an alleged confession on the part of defendant; and (3) in permitting prejudicial argument by the prosecuting attorney, "when the prosecutor referred to the defendant as a liar and perjurer even though the court endeavored to correct same by instructing the jury to disregard the same."

The charge set forth in the information was that defendant on or about the 1st day of February 1952, " * * * did then and there unlawfully, feloniously and willfully take indecent and improper liberties with one Jo Ann Sharp, a female child under the age of sixteen years, to wit, a minor of the age of twelve years, by then and there placing his hands on the private parts of the said Jo Ann Sharp, and by then and there touching parts of the body of the said minor child with his penis * * *."

The state's evidence tended to show that the prosecuting witness hereinafter referred to as Jo Ann was a female child, 12 years of age, whose parents had been killed in an automobile wreck and she had been in the defendant's home for about two years. Defendant's wife, who was a sister of Jo Ann's father, had been appointed and was acting as Jo Ann's guardian and curatrix.

Defendant, who was 60 years of age at the time of the trial in October 1952, had been married for some 13 years, but he had no children of his own. For about eight months prior to February 1, 1952, defendant and his wife and Jo Ann had resided in Buchanan County at 228 Edmonds Street, St. Joseph, Missouri, where defendant operated a restaurant and lived in two rooms immediately back of the restaurant. Defendant and his wife slept in one of these rooms and Jo Ann slept in a roll-away bed in the other room. Friday afternoon, February 1, 1952, Jo Ann's aunt (defendant's wife) went to Chariton County with her father and did not return until the following Sunday. On Friday night, after the restaurant was closed and Jo Ann was in her room fixing her bed and getting ready to retire, the defendant came into her room and bit her on the arm and told her that she would have to go to bed with him. She testified that he "made" her "go to bed with him" and, after they got in bed, he put his hand over on her and started playing with her privates. She was lying on her back and he kept scooting toward her and he tried to put his private in her's while she had her back to him. She said the same thing happened on the following night.

On Saturday night, February 2, 1952, after she and defendant had returned from the picture show, she was getting undressed for bed when defendant said she would have to go to bed with him again. After they were in bed he again played with her privates and tried to put his private in hers.

She said that something like that had happened before and that she had told her older sister Barbara, but not her aunt for fear her aunt would not believe her and would spank her. Her aunt did not often leave for the weekend, but occasionally did.

On being recalled to the witness stand by defendant, she testified that about a month before February 1, 1952, she had told her grandfather "partly what was going on," but she could not remember all of the things she told him about defendant playing around with her. She said she did not really know how long it had been going on, but said that "about two months after we moved down to the cafe he made me put my hands on his private parts." She did not tell her grandfather "right after it started," but did tell him later. After she told her sister Barbara, she also told her aunt with whom Barbara resided (not defendant's wife). She said she was afraid of defendant and, "when all of this was going on," she had not started to have periods.

Defendant was arrested on February 9, 1952, about 9 p. m. and, on the following day, about 2 p. m., he made a statement to the police that was taken down in shorthand and then transcribed and presented to defendant, who read it and signed it. The statement was offered and received in evidence. In this statement defendant stated that he went to bed on Friday, February 1, 1952 at about 11 p. m; that Jo Ann was undressed and in bed in his room before he was; that she had on a little nightgown; that he undressed, put on a pair of pajamas and went to bed; that he had hurt his back that afternoon on the roof and after he was in bed with Jo Ann he asked her to rub some liniment on his back and she did; that she was kidding him and said she would rub his back if he would rub hers; that she loved to have her back rubbed and always had, but that he did not put any liniment on her. He said he did not love and fondle her, "no more than I ever do, I put my arms around her and told her 'good night.' * * * I kissed her, I always do." He further said that he put his hands on her privates and put his penis against her rec-

tum, while her nightgown was up; that she did not play with his penis, only put her hand over there and touched him and took her hand and rubbed it against his penis and stomach; and that his wife had gone to Chariton County that evening.

In the trial of the cause, defendant testified in his own behalf to the effect that on Friday evening, February 1, 1952, when he got ready for bed, Jo Ann was in her bed reading; that he "stopped and kissed her good night" and went on to his bed and went to bed, as was his custom; that "for a year ahead of this date alleged in this information" he did not "at any time become familiar with her or molest her in any way by placing his hands on her private parts, or placing his penis against any part of her body"; that on Saturday, February 2, 1952, about 11:30 p. m., when he got ready for bed he found Jo Ann in his bed. He testified: "I said, what are you doing in there, and she started to kid and said, 'I'm going to sleep under your electric blanket—it's cold in there.' I never gave it a thought and went on to bed. Q. And did you both go on to sleep there? A. Yes." He said that the only time he touched her was when he kissed her good night as usual. On cross-examination, he said it was the first time he had ever slept all night with her in the same bed and that his wife was gone. When cross-examined with reference to his written statement, he could remember little of it, but said that when questioned he could have said: "I hurt my back that afternoon on the roof, I was working up there, I asked her to rub some liniment on my back and she did. She was kidding me and said I will rub your back if you will rub mine. I did not put any liniment on her, she loves to have her back rubbed and always has." He also stated that if he had said it, it would have been true, since it did happen on Saturday night after Jo Ann had retired; and that he kissed her that night, as he always did. On further cross-examination defendant recalled that, at the police station, he had been asked whether he had had sexual intercourse with Jo Ann and whether he had been "fooling around" or "playing around" with her. He said he asked

what these several terms meant and that he then denied that he had committed any of such acts.

We first consider the assignment that the court erred in admitting exhibit "A" in evidence over defendant's objection. The ground upon which the assignment is based is that "it had been conclusively shown, that said statement or alleged confession on the part of the defendant, was obtained by duress."

After the exhibit had been identified by the witness, who took the statement in shorthand and then transcribed it, and after the witness had testified that defendant had read and signed the exhibit in her presence, the exhibit was offered in evidence and objected to on the ground that it had been obtained "as a result of a method which amounted to the third degree, including torture." The trial court then heard testimony at length outside the hearing of the jury. This evidence tended to show that the exhibit was signed by defendant at the police station about 2 p. m., Sunday, February 10, 1952, in the presence of Marie French, matron of the Police Department of the City of St. Joseph, Thelma Sager, Secretary to the Chief of Police of said city, Chief of Police, V. V. Starmer of said city, Gordon Shaffer, the assistant prosecuting attorney, Sgt. Tillman E. Nelson of the Police Department and two detectives, Carl Jessup and R. S. Fuson; that defendant was booked at the station at 9:10 p. m., February 9, 1952; that no one abused or threatened him when he was interrogated; that he merely answered the questions that were asked; that he "at first denied it," but, later, "he told them what happened"; that the statement contained the questions asked and answers given; that, when the written statement was presented to defendant, he said he could not read it without his glasses and they were handed to him; that defendant put on his glasses and read the statement and signed it; that defendant had no bruises on him, was not hysterical and was seemingly in possession of his faculties; that he was told that he did not have to sign the statement and that it could be used against him; that the questioning

had started about 10 a. m., on Sunday, February 10th; that the first questioning lasted about 30 minutes; that defendant was then taken back and locked up and that he was again questioned at 2 p. m. and the statement prepared and signed. No threats were made and defendant said nothing about being sick or having a headache and he did not complain of ill treatment. Three copies of the statement were prepared and signed by defendant and by six witnesses.

In this hearing out of the presence of the jury, defendant testified that he was arrested about 8:30 p. m., Saturday, February 9, 1952; that he was transported to the station, booked, relieved of his personal property, including his glasses, and locked up; that he had been wearing glasses regularly for 8 years; that he could not go without them without getting dizzy and having a headache; that he sat up all night after his arrest; that the next morning he asked several officers for his glasses and told them of his condition, but they failed to deliver his glasses to him; that he was taken out and questioned at 10 a. m., Sunday, and again locked up without being advised as to the matter under investigation; that a second time he was questioned and again locked up; that at a third questioning a statement was taken; that he was sick at his stomach, nervous and had a headache; that, when he got glasses, his eyes could not get set to the glasses so that he could see; that he was brought out and told to sign the statement; that he did not have any idea what he was signing; that earlier in the day, Mr. Shaffer, the assistant prosecuting attorney, had said to him: "I have enough on you that I could throw the whole book at you"; that Chief Starmer shook his hand in his face and said: "We have enough on you to send you down for the rest of your life"; that he (defendant) never completely read the statement; that the statement was read to him; that he could not keep up with the person reading it to him; that no one abused or struck him or made any other threats against him, except as stated; that he did not recall all of the matters in the written statement about being advised of his constitutional

rights; that he remembered saying that he could not see without his glasses; that the signature on the exhibit looked like his handwriting; that he didn't understand the questioning; and that he was not permitted to use the telephone or see his wife before the statement was signed.

The exhibit was received in evidence over defendant's renewed objection and, during the course of the trial substantially the same evidence was presented before the jury as had been heard by the court. In the final submission of the case, the court advised the jury that a confession to be admissible or to be considered must be made voluntarily and, if it was voluntary, the jury could consider it and give it such weight as they saw fit.

■ The conflicting evidence heard by the court outside of the presence of the jury was wholly insufficient to require a ruling that, as a matter of law, the confession set forth in exhibit "A" was obtained by duress. The court did not err in holding there was substantial evidence from which the jury could find that the confession was voluntary, nor did the court err in admitting the exhibit in evidence. A proper foundation for the admission of the exhibit had been laid. State v. Christup, 337 Mo. 776, 85 S.W.2d 1024, (3, 4); State v. Cochran, 356 Mo. 778, 203 S.W.2d 707, 710(3); State v. Perkins, 355 Mo. 851, 198 S.W.2d 704, 708(3), 168 A.L.R. 920. The question of the voluntariness of the confession was one of fact and, on similar evidence subsequently offered before the jury, this issue, as stated, was submitted. The assignment is overruled.

■■ We have previously reviewed the evidence in support of the State's case. In determining the sufficiency of evidence to authorize the submission of a cause to a jury, we consider as true the evidence favorable to the State and the favorable inferences reasonably to be drawn therefrom. Evidence to the contrary is rejected. State v. Harmon, Mo.Sup., 243 S.W.2d 326, 331(7); State v. Holtzclaw, Mo.Sup., 258 S.W.2d 666(1). When so considered the

evidence in this case was sufficient and substantial to support a verdict that defendant was guilty of the crime charged. State v. Childers, Mo.Sup., 268 S.W.2d 858, not yet reported in the state reports; State v. Kornegger, 363 Mo. 968, 255 S.W.2d 765; State v. Brooks, Mo.Sup., 254 S.W.2d 642, 644. And see State v. Chittim, Mo.Sup., 261 S.W.2d 79, 80(2); State v. Klink, Mo.Sup., 254 S.W.2d 650, 655. The court did not err in refusing to direct a verdict for defendant as requested.

The record shows the following during the opening argument for the State:

Mr. Downs (prosecuting attorney): "One of the marks of a good liar or a perjurer is that you must have a good memory. * * *

"Mr. Frankenhoff: I object and ask that the court instruct the jury to disregard the remarks of the prosecuting attorney.

"The Court: The jury will disregard the remarks of the prosecuting attorney when he refers to him as a liar and a perjurer. Those are improper remarks and the jury will disregard those remarks."

■ It is apparent from the record that the only relief requested was fully granted and that no other or further relief was asked. Since defendant was fully satisfied with the relief granted at the time and no further relief was asked he may not now complain. The assignment of error is overruled.

The motion for a new trial contains various other general assignments of error such as (1) the court erred in admitting incompetent and immaterial evidence; (2) the court erred in excluding competent and material evidence; (3) the court erred in giving each and every instruction given; (4) the verdict is against the evidence; and (5) the verdict is the result of bias and prejudice on the part of the jury, but in none of these assignments has defendant "set forth in detail and with particularity * * * the specific grounds or causes therefor" as required by Section 547.030 RSMo 1949, V.A.M.S. None of these as-

signments are sufficient to present anything for review. State v. Burks, Mo.Sup., 257 S.W.2d 919, 920.

We have examined the record proper. The information clearly states an offense under the statute. The verdict of the jury is in proper form and responsive to the issues and the punishment assessed was within that prescribed by the statute. Defendant was granted allocution and the judgment and sentence are in proper form and fully comply with the statute.

The judgment is affirmed.

All concur.