**STATE of Missouri, Respondent,**

v.

**Kevin Paul PRIER, Appellant.**

**No. 12421.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 19, 1983.

John Ashcroft, Atty. Gen., Sandra K. Stratton, Carrie D. Francke, Asst. Attys. Gen., Jefferson City, for respondent.

R.J. Gordon, Public Defender, Charles F. Buchanan, Asst. Public Defender, Joplin, for appellant.

CROW, Judge.

A jury found appellant guilty of manslaughter, § 565.005, RSMo 1978[1], and assessed punishment at ten years imprisonment. § 565.031, RSMo 1978. The trial court entered judgment and sentence in accordance with the verdict.

On February 20, 1981, Pamela Jane Fausett, a twenty-two year old mother of three children, left her home about 12:30 p.m. Her children remained there with appellant, a nineteen year old male who had "moved in" a month earlier. When Pamela departed, her youngest child Jerry, age nineteen months, was in "good" condition, with no "marks" on his buttocks or cheeks. About two hours later, appellant arrived on foot at a neighbor's house, carrying Jerry and asking for help. Jerry had feces on his lower back and legs, and blood on his mouth. Appellant explained he had "spanked" Jerry. Appellant looked "scared." An ambulance arrived, and the driver-technician observed Jerry having "breathing difficulties," which intensified en route to the hospital. The technician also saw the feces, and "bumps and bruises." The technician described Jerry's pupils as "dilated and not reactive."

At the hospital, physicians discovered a subdural hematoma—a "bloodclot"—between the right side of Jerry's brain and his skull. There were multiple bruises on Jerry's face, legs, buttocks and body. Jerry was in a "very deep coma," unresponsive to voices and only minimally responsive to pain. One physician said the force required to cause Jerry's head injury was "consistent with a child that would walk into a baseball bat." The physician could not account for Jerry's condition "other than with some type of significant trauma."

A neurosurgeon removed the hematoma and put Jerry on medication, attempting to reduce the brain edema (swelling). Severe edema ensued, however, causing Jerry's death three days later. The neurosurgeon

attributed the brain edema to "head trauma" occurring within "a couple of hours" preceding Jerry's arrival at the hospital.

During questioning by a detective on the day of the incident, appellant said he had to "whip" Jerry about potty training, and that he—appellant—grabbed Jerry's face, possibly causing the facial bruises. Appellant explained that Jerry was on appellant's lap on a divan sharing a sandwich, that Jerry spit some out, and that appellant pushed Jerry off his lap. Jerry fell to the floor, striking his head. Appellant picked Jerry up, and Jerry indicated his diaper was wet. Appellant removed the diaper and took Jerry to a "potty-chair" in the bathroom. When appellant turned to leave, Jerry attempted to follow, whereupon appellant took Jerry's face in appellant's hand, making a motion that caused Jerry's head to hit a door. Appellant again set Jerry down, but Jerry refused to stay. Appellant grabbed Jerry's neck and pushed him toward the potty-chair. Jerry lost his balance, falling against the bathtub and hitting his head on the wall or chair. According to appellant, Jerry began "crying and screaming," so appellant spanked Jerry "very hard three times," and again placed Jerry on the chair. Appellant said he left the bathroom, then heard a "thump" and returned to find Jerry lying on the floor. Appellant noticed "something wrong"; Jerry was "not breathing properly." Appellant then carried Jerry to the neighbor's house.

Appellant's statements were reduced to writing, signed by appellant, and received in evidence at trial.

Appellant testified in conformity with his pretrial statements, and presented other evidence tending to show he meant Jerry no harm and that Jerry's bruises were not caused by appellant.

Appellant's first point is that the evidence was insufficient for a jury to find beyond a reasonable doubt that Jerry's

1. Appellant was tried on an information charging murder in the second degree "in violation of Section 559.020, RSMo." The incident from which this case arose occurred February 20,

1981. On that date, murder in the second degree was proscribed by § 565.004, RSMo 1978, which formerly appeared as § 559.020, RSMo 1969.

death was caused by the "criminal agency" of appellant. Appellant asserts the evidence did not "preclude" that Jerry's death was due to accident.

The point is answered by *State v. Banister,* 512 S.W.2d 843 (Mo.App.1974), a case of remarkable similarity. In *Banister,* a subdural hematoma was "the most probable primary cause" of death of the six month old victim. The state's evidence showed instances of physical abuse of the victim by the defendant during the period when the fatal trauma was inflicted, including slapping, and hitting the victim's head against a door. Defendant challenged the sufficiency of the evidence to sustain a conviction. Denying the point, the Court said:

> "Manslaughter is the unjustifiable, inexcusable and intentional killing of a human being without deliberation, premeditation and malice. *State v. Ayers,* 470 S.W.2d 534 (Mo. en banc 1971); and Section 559.070 RSMo 1969, V.A.M.S. Where death results from an unlawful assault and battery, and the assault is without malice, the assailant is guilty of manslaughter, even though death was not intended and the assault itself was not of a character likely to result in the death of the person assaulted. *State v. Watson,* 364 S.W.2d 519 (Mo.1963); and *State v. Cooley,* 387 S.W.2d 544 (Mo.1965)." 512 S.W.2d 843 at 845[1, 2].

■ Here, medical evidence established that Jerry's subdural hematoma did not result from normal discipline or childhood accidents, but rather from significant trauma. There was no hint of any such trauma from any source other than appellant. Appellant's acts were admittedly intentional. The fact that Jerry's death may have been unexpected does not change the character of appellant's conduct from intentional to accidental. A submissible case of manslaughter was made. The issue of whether appellant's conduct was "lawful" was submitted to the jury by proper instruction.

MAI–CR 2d 2.28. *State v. Black,* 611 S.W.2d 236 (Mo.App.1980), relied on by appellant, is inapposite. *Black* was a second degree murder conviction in which the issue was whether the gun that fired the fatal shot was discharged intentionally or accidentally. Appellant's first point is denied.

Appellant's second point is that the trial court erred in receiving in evidence appellant's statements to the detective because the state failed to prove the corpus delicti of homicide, in that the evidence failed to show that Jerry's death did not result from accident.

■ In homicide, the corpus delicti consists of the death of a human being, and the criminal agency of someone other than the deceased as the cause. *State v. Lusk,* 452 S.W.2d 219 at 221[1], (Mo.1970). As already noted, there was competent evidence that Jerry's death did not result from accident, but from significant trauma of nonaccidental origin. The trauma was obviously not self-inflicted. Appellant's second point is denied.

Appellant's third point is that the trial court erred in failing to instruct the jury on "justifiable homicide" where there was evidence that appellant exercised force because he was charged with responsibility for Jerry's care and discipline. In order to evaluate this contention, the status of "justifiable homicide" as a defense to a homicide prosecution must be examined.

Prior to January 1, 1979, justifiable homicide was defined by statute, § 559.040, RSMo 1969, and excusable homicide was also defined by statute, § 559.050, RSMo 1969. Homicide occurring in lawfully correcting a child was covered by the latter section.[2] "Justifiable" homicides (§ 559.-040, RSMo 1969) were those occurring in defense of person or property, or lawful arrests and peacekeeping. Both sections were repealed by The Criminal Code, Laws

---

**2.** § 559.050, RSMo 1969, provided in pertinent part:

> "Homicide shall be deemed excusable when committed by accident or misfortune, in either of the following cases:

> (1) In lawfully correcting a child, apprentice or servant, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without unlawful intent; or . . . ."

1977, S.B. 60. Use of physical force in correcting a child is now covered by § 563.061(1), RSMo 1978[3], which describes certain situations where appropriate force is "justifiable."

■ MAI–CR 2d contains only one instruction covering homicides resulting from use of physical force in correcting a child: MAI–CR 2d 2.28. The trial court gave MAI–CR 2d 2.28 in proper form.[4]

MAI–CR 2d 2.28, Notes on Use 1, states that the law set out in that instruction is part of the common law, unaffected by the repeal of § 559.050, RSMo 1969. MAI–CR 2d contains no pattern instruction on the "justifiable" use of physical force on a child by one entrusted with his care under § 563.061(1), RSMo 1978. Thus, the trial court gave the only instruction in MAI–CR 2d which covered the issue. Appellant tendered no other instruction on that issue at trial.

MAI–CR 2d 2.28, though not in the language of § 563.061(1), RSMo 1978, fairly submits the issue of lawful force in correcting a child. Its use was mandatory. MAI–CR 2d 2.28, Notes on Use 2. Had the trial court, *sua sponte,* given an instruction in the language of § 563.061(1), RSMo 1978, the jury would have had two instructions, worded differently, on the same issue. Whenever there is an applicable MAI–CR 2d instruction, it must be given, to the exclusion of any other on the same subject. Rule 28.02(c).[5] Appellant's third point is denied.

Appellant's final point is that the trial court erred in refusing to give an instruction tendered by appellant which defined "recklessly." Appellant contends the instruction was necessary for the jury's use in applying the excusable homicide instruction, MAI–CR 2d 2.28.

■ The point is answered by MAI–CR 2d 33.00, Notes on Use 8, which provides that unless Notes on Use expressly require or permit the definition of a term, word or phrase, it must not·be defined even if requested by counsel. *State v. Abram,* 537 S.W.2d 408 (Mo. banc 1976). The Notes on Use under MAI–CR 2d 2.28 neither require nor permit the definition of "recklessly." Failure to define it was not error. The point is denied.

Judgment affirmed.

GREENE, C.J., FLANIGAN, P.J., and TITUS, J., concur.

---

**3.** § 563.061(1), RSMo 1978, provides:
"1. The use of physical force by an actor upon another person is justifiable when the actor is a parent, guardian or other person entrusted with the care and supervision of a minor or an incompetent person or when the actor is a teacher or other person entrusted with the care and supervision of a minor for a special purpose; and
(1) The actor reasonably believes that the force used is necessary to promote the welfare of a minor or incompetent person, or, if the actor's responsibility for the minor is for special purposes, to further that special purpose or to maintain reasonable discipline in a school, class or other group; and
(2) The force used is not designed to cause or believed to create a substantial risk of causing death, serious physical injury, disfigurement, extreme pain or extreme emotional distress."

**4.** MAI–CR 2d 2.28, given by the trial court, said:
"One of the issues in this case is whether the death of Jerry Fausett was an excusable homicide. By "excusable homicide" is meant the killing of another by accident or misfortune under the circumstances submitted in this instruction. On that issue you are instructed as follows:
1. The state has the burden of proving beyond a reasonable doubt that the death of Jerry Fausett was not an excusable homicide. The defendant is not required to prove that the death was excusable. If the death was an excusable homicide, or if the evidence in this case leaves in your mind a reasonable doubt as to whether the death was an excusable homicide, then you must find the defendant not guilty.
2. You will acquit the defendant on the ground of excusable homicide and return a verdict of not guilty if the death of Jerry Fausett was the result of accident or misfortune in lawfully correcting Jerry Fausett without unlawful intent and without reckless disregard for human life and safety."

**5.** Rule references are to Missouri Rules of Criminal Procedure, V.A.M.R.