STATE of Missouri,
Plaintiff-Respondent,

v.

Melvin KING, Defendant-Appellant.

No. 13021.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 7, 1983.

John D. Ashcroft, Atty. Gen., Sandra K. Stratton, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Gene C. Thompson, Carthage, for defendant-appellant.

GREENE, Chief Judge.

Defendant, Melvin King, was charged with capital murder and jury-convicted of murder in the second degree. He was sentenced to 25 years' imprisonment in accordance with the jury's recommendation.

Viewed in the light most favorable to sustain the jury verdict, the evidence was that on the evening of May 17, 1979, a 21 year old girl, Linda Johnson, was driven to Beefmaster's, a restaurant and bar in Newton County, Missouri, by her brother, Mark. Linda intended to spend the evening at that location and had arranged for a ride home with a friend, Bonnie Kingore, whom she was to meet at Beefmaster's. Linda was in a good mood, had just finished a semester at college, and was looking forward to the summer vacation.

After arriving at Beefmaster's, Linda visited with Bonnie and then spoke with Gary Hertweck, whom she had dated periodically, for approximately an hour. She informed Gary that she had to go outside to speak with Melvin King and asked Gary to watch her purse until she returned. Gary said Linda acted as though the task of talking to King was unpleasant, but that she seemed to feel obligated to speak with him. Gary did not see Linda again and her purse was given to the bartender to keep until she returned. Linda knew King casually, but had refused to date him, and had told her sister that she was not interested in pursuing any relationship with him. It was not Linda's habit to leave her purse for any length of time, particularly so on this evening as she was on her menstrual cycle and had sanitary supplies in her purse. Linda did not return to the restaurant or go to her home later.

As a part of the police investigation of her disappearance, King was questioned by police officer Blake Wolfe five days after Linda's disappearance. King was extremely nervous, and had deep scratch marks on both sides of his face and neck consistent with scratch marks found in "strangulation or sexual assault type cases." King admitted to Wolfe that he had been talking to Linda on the parking lot, and that Linda got into "a greenish colored Chevrolet" that had pulled onto the parking lot and left.

During the summer of 1979, King told Miles Copher, his half brother, that he had been out with Linda when "two guys by the name of Nicky and Lorenzo that he had known back when he was in the service, happened to come up on him and Linda

Johnson, and that Lorenzo killed Linda Johnson and he killed Lorenzo, and then Nicky and he hauled off Lorenzo's body." Some three to five weeks later, King showed Copher scratch marks on his stomach, said they were knife marks and that Nicky and Lorenzo "had got him down . . . and said that if he said anything about Lorenzo killing Linda Johnson, that they were going to get him next." By this time, King's hair had turned almost totally white, his hands were all "tensed up", and he moaned when he moved.

One year and 12 days after her disappearance, Linda's skeletal remains were found in heavy underbrush in a remote portion of Jasper County. Her skeletal remains were identified through dental records and clothing and jewelry found at the site.

King was arrested and interrogated by David Carlton, an investigator for the Jasper County prosecuting attorney. King admitted that he "could have" told his half brother that he was present when Linda was killed, and that Nicky and Lorenzo were "a figment of my imagination." King presented no evidence at trial.

On appeal, King relies on eleven points of claimed error. Points I, II, III, IV, VII, VIII and IX contend, in various ways, that the case should never have been submitted to the jury because of the lack of sufficient evidence to show that Linda Johnson's death was intentionally caused by the act of anyone, or that King killed her, or that her death occurred in Jasper County.

■ In homicide cases, the corpus delicti consists of the death of a human being, caused by the criminal agency of someone. *State v. Prier,* 645 S.W.2d 747, 749 (Mo.App. 1983). The state must prove these two elements beyond a reasonable doubt, as well as proving the criminal agency of the accused. The proof may be supplied by circumstantial evidence, and if the circumstances, taken as a whole, support a finding of death through the criminal agency of a specific person, such a finding is conclusive. *State v. Letterman,* 603 S.W.2d 951, 954 (Mo.App.1980). In proving corpus delicti, the reasonable rule has always been that

only the best proof that is presently attainable need be shown. *State v. Brooks,* 551 S.W.2d 634, 646 (Mo.App.1977), cert. denied, 434 U.S. 1017, 98 S.Ct. 736, 54 L.Ed.2d 763 (1978).

■ There is no question here as to proof of the death of Linda Johnson. This was established by dental records, plus identification of clothing and jewelry found on the skeletal remains. There also is no legitimate doubt as to whether Linda Johnson met her death through the criminal agency of someone. She was in good health and good spirits when she left Beefmaster's to have a brief word with King on the parking lot. She intended to return, as evidenced by her conversation with Gary Hertweck, and by the leaving of her purse in his custody. She did not have her own transportation. These facts, plus the fact that her skeletal remains were found a year later, in heavy underbrush and about 100 yards from an access road on a remote portion of a Jasper County farm, support an inference that Linda met her death as the result of the criminal agency of someone. A similar claim of circumstantial evidence has been held sufficient to sustain a conclusion that a person's death was due to the criminal agency of another. *State v. Lusk,* 452 S.W.2d 219, 221 (Mo.1970).

There was also sufficient circumstantial evidence to support a legitimate inference that King killed Linda Johnson. He was the one who insisted that Linda come outside to talk to him. He had an automobile and she did not. She did not want to talk to him, but felt that it was a task that she was obligated to perform. After Linda's disappearance, King never drove his car again, secreted it behind his mother-in-law's house, and finally sold it. When questioned by police shortly after Linda's disappearance, King had scratch marks on both sides of his face and neck consistent with those seen in strangulation or sexual assault cases. King's hair turned white, his hands were "tensed up", and he moaned when he moved. He told conflicting stories to his half brother and the police as to the circumstances of Linda's death, but admitted he

was present when she was killed. Hair samples taken from King's automobile interior, including the trunk, were consistent with those taken from Linda's hair brush. This evidence, and the reasonable inferences derived therefrom, is clearly sufficient to establish the criminal agency of King, and to sustain his conviction. *State v. Suschank,* 595 S.W.2d 295, 296–297 (Mo.App. 1979); *State v. Lusk,* supra.

■ As to the lack of proof of venue argument raised in point II, § 541.033,[1] states that the venue is satisfied by trial in any county in which any one of the elements of the crime occurred. *State v. Rollie,* 585 S.W.2d 78, 84 (Mo.App.1979). Venue, as any other fact, may be proven by circumstantial evidence [*State v. Poelker,* 378 S.W.2d 491, 494 (Mo. banc 1964)], and while it must be proven, is not an integral part of the offense charged. This being so, it need not be proven beyond a reasonable doubt but can be inferred from all the evidence. *Eichelberger v. State,* 524 S.W.2d 890, 893 (Mo.App.1975).

■ The evidence related herein supports the inference that Linda Johnson was driven by King, in his car, from Beefmaster's, which is located in a populous area with a well lighted parking lot and only a few hundred yards south of the Jasper County line, to Jasper County where she was murdered and her remains dumped at the location where her body was eventually found. In a criminal case venue may be established if the jury reasonably could find from the facts and circumstances introduced into evidence that the crime with which a defendant has been charged occurred within the trial court's jurisdiction. *State v. Rocha,* 526 S.W.2d 834, 837–838 (Mo.App.1975). There is no merit in any of the claims raised in points I, II, III, IV, VII, VIII and IX of King's brief and they are denied.

In point VI, King contends that it was error for the trial court to permit the state to substitute the information for the grand jury indictment on the day of trial. He argues that the indictment alleged Linda died by strangulation, while the information did not allege a specific cause of death, and that he was prejudiced by not being afforded a preliminary hearing on the charge in the information.

■ The point, as written, is in violation of Rule 30.06(d), in that it fails to state what action of the trial court is sought to be reviewed, and wherein and why the trial court's actions were erroneous. *Adail v. State,* 612 S.W.2d 6, 7 (Mo.App.1980). Plain error review under Rule 29.12(b) reveals no manifest injustice or miscarriage of justice by the substitution of the information for the indictment. Where an information is substituted for an indictment, no preliminary hearing is required. § 544.250; *Boykins v. State,* 566 S.W.2d 509 (Mo.App.1978). In addition, there is no requirement that an information state the cause of death. *State v. Courtney,* 356 Mo. 531, 202 S.W.2d 72, 74 (1947); *Holtkamp v. State,* 588 S.W.2d 183, 186–187 (Mo.App.1979). The point is denied.

In his points X and XI, King contends that the trial court committed error in submitting Instructions 5 and 6 to the jury. The instructions, which were verdict directors for the crimes of second degree murder and manslaughter (MAI–CR2d 15.14 and 15.18), varied from those pattern instructions because the phrase dealing with the *method* (shot, stabbed, struck, etc.) by which Linda Johnson was killed was deleted. The instructions, as given, were as follows:

### "INSTRUCTION NO. 5

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 17th day of May, 1979, in the County of Jasper, State of Missouri, the defendant caused the death of Linda Johnson, and

Second, that the defendant intended to take the life of Linda Johnson, and

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, and all references to rules are to Missouri Rules of Court, V.A. M.R.

Third, that the defendant did not do so in anger, fear, or agitation suddenly provoked by the unexpected acts or conduct of Linda Johnson,

then you will find the defendant guilty of murder in the second degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions you must find the defendant not guilty of that offense.

If you do find the defendant guilty of murder in the second degree you will fix his punishment at imprisonment by the Department of Corrections for a term fixed by you, but not less than ten years nor more than life imprisonment. MAI–CR2d 15.14

### INSTRUCTION NO. 6

If you do not find the defendant guilty of murder in the second degree, then you must consider whether he is guilty of manslaughter.

If you find and believe from the evidence beyond a reasonable doubt that on or about the 17th day of May, 1979, in the County of Jasper, State of Missouri, the defendant caused the death of Linda Johnson, then you will find the defendant guilty of manslaughter.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, then you must find the defendant not guilty of that offense.

If you find the defendant guilty of manslaughter you will fix his punishment:

1. By imprisonment by the Division of Corrections for a term fixed by you, but not less than two nor more than ten years, or

2. By confinement in the county jail for a term fixed by you, but not less than six months nor more than one year, or

3. By a fine fixed by you, but not less than $500 nor more than $1,000, or

4. By both a fine fixed by you, but not less than $100 nor more than $1,000, and confinement in the county jail for a

term fixed by you, but not less than three months nor more than one year. MAI–CR2d 15.18."

Defendant does not explain in points relied on X and XI why the deletions of language specifying *how* Linda Johnson was killed from Instructions 5 and 6 were prejudicial to him. As written, the points violate the tenets of Rule 30.06(d) and preserve nothing for review. Plain error review under Rule 30.20 discloses no prejudicial error arising from such deletions. Rule 28.02(c) provides that whenever there is a MAI–CR instruction *applicable under the law to the facts* the MAI–CR instruction shall be given to the exclusion of any other on the same subject. Rule 28.02(d) recognizes that in some cases pattern instructions must be modified and, where modification is necessary, the instruction must be simple and impartial. Informations charging murder need not state the manner in which the deceased was killed. *State v. Courtney,* supra 202 S.W.2d at 74. We know of no reason why murder instructions should not be treated in the way where, as here, it is impossible to determine from the facts the means by which the victim met her death. The law does not demand the impossible. Instructions 5 and 6 contained every essential statutory element for the offense charged and required a finding of all facts necessary to constitute the offense. This being so, Instructions 5 and 6, as submitted, were correct. Points X and XI are denied.

King's remaining point (V) was that the jury verdict was against the weight of the evidence. The weight of the evidence in a jury-tried criminal case is not a matter for appellate court review. *State v. Dick,* 636 S.W.2d 425, 428 (Mo.App.1982). The point is denied.

Defendant had a fair trial, and we find no prejudicial error.

The judgment is affirmed.

FLANIGAN, P.J., and TITUS and CROW, JJ., concur.