STATE of Missouri,
Plaintiff-Respondent,

v.

Lonnie ABERCROMBIE,
Defendant-Appellant.

No. 13457.

Missouri Court of Appeals,
Southern District,
Division One.

July 1, 1985.

William L. Webster, Atty. Gen., Mary Elise Burnett, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David Robards, Public Defender's Comm., Joplin, for defendant-appellant.

TITUS, Presiding Judge.

Defendant was jury-convicted of the second degree murder (§ 565.004)[1] (now repealed) of his seven-week-old daughter whose death was averredly caused in violation of § 568.060 when defendant allegedly shook "her and her head causing bilateral subdural hematomas and bilateral cerebral contusion thereby causing [her] to die on November 27, 1982." Per the verdict, defendant was sentenced to a 25 year term of imprisonment. Defendant appealed.

Viewed in the light most favorable to the state, State v. Brown, 660 S.W.2d 694, 699[10] (Mo. banc 1983), the trial evidence showed the following. Melissa, the infant in question, resided in Barry County with her father (defendant), mother, two siblings and great-grandfather. Saturday night, November 20, 1982, Melissa was put to bed by her mother. However, when the mother awoke early the next day, Sunday

---

1. Statutory and rule references are to V.A.M.S. and V.A.M.R. Allegedly, the crime charged occurred in Barry County but the trial thereon was held in Newton County after a change of venue.

November 21, she found Melissa in the baby's swing crying and holding her knees to her stomach. The mother could not remember if defendant had retired the previous night when she did, but he was in bed Sunday morning when Melissa was discovered in the swing. Defendant and the mother planned to take Melissa to the doctor but when Melissa's condition appeared to improve, defendant left the house. During defendant's absence, the baby's condition worsened and the mother took her to a Monett hospital. After Melissa was examined there, the mother was told to take the child to a Springfield hospital which she did via ambulance. Defendant was told of the matter and went to the Springfield hospital where the mother told him Melissa had brain damage.

That evening at the Springfield hospital the Barry County sheriff and a deputy interviewed defendant and the mother after giving them "the *Miranda* warnings." The officials were separately told by the interviewees that on November 16, or five days earlier, they, their three children and defendant's mother were riding in defendant's van near Broken Arrow, Oklahoma, when defendant swerved the van into a pile of dirt to avoid hitting a car which had stopped on the roadway ahead of the van. The sudden stop resulted in the child carrier occupied by Melissa being thrown forward and down in the van. Defendant and the mother recounted taking Melissa to a Broken Arrow clinic where she was pronounced to be in good health.

After having been on a respirator since entering the Springfield hospital, Melissa died November 27, 1982. Defendant and the mother continued to recount the Broken Arrow accident as a possible cause of Melissa's injuries albeit both of them were arrested early the next month (December) on charges of murder in the second degree and felony child abuse. The mother was later released.

Defendant, his wife and his mother subsequently recanted their concocted stories anent the Broken Arrow casualty. On December 30, 1982, defendant asked to speak to the deputy with whom he'd first conversed. After adequate warnings, defendant signed a statement saying that on November 19, 1982, he and some friends "drank quite a bit ... smoked some pot" and that he returned home near 10:30 p.m. when his "wife and children were in bed asleep." After returning home, defendant said he "took four hits of acid [and] began to see things." Near 12:30 a.m., defendant recounted, he "moved Melissa from her bed and placed her in her swing. Somewhere during this time I did bodily harm to her. I do not remember this [and] I take full responsibility for the charges I have been charged with ... unknowing to my wife." On January 7, 1983, defendant gave a second signed written statement to the same deputy which was almost verbatim to the first. However, after saying that as he moved Melissa from her bed to the swing, he added that "I did bodily harm by picking her up by her head and falling on her."

A physician specializing in neurological surgery examined Melissa soon after her arrival at the Springfield hospital. The doctor had the baby taken to the computer scan room. It was observed that Melissa could not breathe unaided, that her pupils were fixed and dilated and would not react which "means damage to the brain stem." The scan showed Melissa's brain was swollen and "badly bruised all over, from front to back, with a thin film of blood on the surface of the brain between the membrane of the brain and the skull. But inside the substance of the brain there were bruises and evidence of swelling and small hemorrhages profusely." The brain injuries, according to the doctor, were not incurred "within a few seconds or split seconds, as one would expect in an accident." Rather, the injuries could have been sustained if the baby had been "picked up by the head or by the ears, and shaken."

The pathologist who performed an autopsy on the child testified the cause of death was brain damage with a contributing factor of double pneumonia. The doctor also found hematomas on both sides of the

brain and in the ventricular system which were less than two weeks old. The physician's findings were consistent with those disclosed by the prior computer scan, supra, which he said were consistent with the child's having been shaken. The defendant called a medical doctor who testified for the defense. When asked if Melissa's injuries as stated in the autopsy report would "be consistent with picking a child up, tripping and falling on it," defendant's medical witness answered, "No." The neurological surgeon who examined Melissa upon her admission to the Springfield hospital was asked: "If a baby were picked up by the head or by the ears, and shaken, could it sustain the injuries that you found on November the 21st?" He answered: "Yes, sir."

Defendant's first point relied on is bifurcated. While ceding a reasonable jury could find that the fatal hematomas suffered by Melissa resulted from his actions, defendant contends 1) the evidence was insufficient to establish that he shook the child and 2) even so, the evidence was insufficient to establish he did so knowing his actions in shaking the child were practically certain to produce the injuries which caused Melissa's death.

"In determining the sufficiency of the evidence to support a finding of guilt, we do not weigh the evidence; rather, we accept as true all evidence and inferences which tend to support the verdict and disregard all evidence and inferences to the contrary. The question is whether the evidence, viewed in the light most favorable to the State, is sufficient to support the verdict." *State v. Lassen*, 679 S.W.2d 363, 365[1, 2] (Mo.App.1984). In cases predicated upon circumstantial evidence, as here, the circumstances and facts relied on by the state must be consistent with each other and with guilt. Also, such facts and circumstances must be inconsistent with any reasonable theory of innocence and they must exclude every reasonable hypothesis of defendant's innocence, although they need not conclusively establish guilt or demonstrate the impossibility of innocence. *State v. Prier*, 634 S.W.2d 197,

199[1] (Mo. banc 1982). But the circumstantial evidence rule and considerations just noted do not alter the fact that the evidence is still to be viewed in the light most favorable to the state. *State v. Harris*, 639 S.W.2d 122, 125 (Mo.App.1982).

In defendant's first formed written statement to the deputy, supra, he admitted that when he moved Melissa from her bed to the swing, "I did bodily harm to her" for which "I take full responsibility for the charges I have been charged with." By his second statement, defendant added that while moving the infant from bed to swing, "I did bodily harm by picking her up by the head and falling on her." As to his first point relied on defendant contends, despite his just noted statements, that while he may have admitted to injuring Melissa, his admissions and the other evidence were insufficient to establish that the fatal injuries resulted from shaking as charged in the information.

■■■ In his two statements made to the deputy, defendant manifested an awareness of guilt when he took full responsibility for the bodily harm done to Melissa. Of course when voluntarily made, defendant's statements which tend to incriminate and connect him with the crime charged and which manifest a consciousness of guilt are admissible as admissions against interest. *State v. Hindman*, 543 S.W.2d 278, 284[7] (Mo.App.1976). When defendant's admissions are coupled with our summarization of the medical testimony in the cause, supra, the two provide support for the jury's verdict which obviously was reached through the conclusion that the cranial injuries caused to the infant which produced her death were consistent with and could have been caused by shaking. The state is not required to establish guilt conclusively nor exclude each and all hypothesis of innocence, even in a circumstantial evidence case. *State v. Brown*, supra, 660 S.W.2d at 699[12].

■■■ In defendant's second challenge to the sufficiency of the evidence, he claims that even if he shook Melissa the evidence

did not support a finding that he knowingly inflicted cruel and unusual punishment on her. Direct proof of the required mental state (here "knowingly") is seldom available and such intent is usually inferred from circumstantial evidence. Mental elements establishing that a defendant knowingly did an act may be proved by indirect evidence and inferences reasonably drawn from circumstances surrounding the incident. *State v. Turner*, 623 S.W.2d 4, 7 (Mo. banc 1981). Here the victim was seven weeks of age and defendant admitted picking her up by the head and thereby doing "bodily harm to her." Defendant's own medical expert acknowledged Melissa's injuries were not consistent with defendant's falling on the child. For the purpose of this portion of defendant's second challenge to the sufficiency of the evidence, he cedes the child was shaken but, in considering defendant's mental state, ignores the medical testimony that the fatal injuries were not incurred accidentally within split seconds as defendant claimed in his statement but rather probably resulted from the infant being shaken several times or over a period of time. From the facts in evidence there was sufficient evidence for the jury to reasonably conclude that defendant acted knowing some injuries to the child were practically certain to result. Defendant's first point relied on is denied.

Defendant's second point relied on: "The trial court erred in failing to grant the defendant a judgment of acquittal as the state failed to prove the corpus delicti of homicide in that the state failed to show that the death of the child was caused by the criminal agency of another person."

■ "In homicide cases, the corpus delicti consists of the death of a human being, caused by the criminal agency of someone. .... The state must prove these two elements beyond a reasonable doubt, as well as proving the criminal agency of the accused. The proof may be supplied by circumstantial evidence [*State v. Sherrill*, 657 S.W.2d 731, 737[13] (Mo.App.1983) ], and if the circumstances, taken as a whole, sup-

port a finding of death through the criminal agency of a specific person, such a finding is conclusive.... In proving corpus delicti, the reasonable rule has always been that only the best proof that is presently attainable need be shown...." *State v. King*, 662 S.W.2d 304, 307[1–4] (Mo.App. 1983). The state must prove, to establish the corpus delicti, that the death was neither self-inflicted nor the result of natural causes or accident. *State v. Priest*, 660 S.W.2d 300, 304[2] (Mo.App.1983). Defendant does not contend the death was due to natural causes or was self-inflicted. Rather he asseverates the state did not prove the death was not the result of an accident.

Defendant advanced but two theories of accident. The first was that Melissa had received her injuries in an automobile accident near Broken Arrow, Oklahoma. However, as previously noted, all adult witnesses made complete renunciation of this concoction. Defendant's only other hypothesis of an accident was that Melissa was injured when he picked her up by the head and fell on her. As previously seen, this contention was directly refuted by the medical evidence including the testimony of defendant's medical witness.

The evidence and inferences reasonably drawn therefrom, refuted all allegations of accident advanced by defendant. Consequently, as a result of defendant's taking "full responsibility for the charges I have been charged with," the testimony excluding the possibility of an accident and the direct medical evidence showing Melissa's fatal injuries were caused by her being deliberately shaken the state proved the corpus delicti of homicide. Defendant's second point is denied.

Defendant's third and final point relied on is that the trial court failed, sua sponte, to dismiss the information for its failure to allege each and every statutory element of the crimes charged. (See statutory citations in the first paragraph hereof.) The instructions admittedly contained each such element. Defendant did not question the details of the crime charged in the information via a bill of particulars per Rule 23.04

or otherwise. For an excellent critique on solving defendant's asseverations adverse to him, see *State v. Reese*, 687 S.W.2d 635 (Mo.App.1985).

On the basis of *State v. Reese*, defendant's final point is denied and the judgment nisi is affirmed.

FLANIGAN and GREENE, JJ., concur.